BURNETT & COMPANY, plaintiffs in error, *vs.* BLACKMAR & CHANDLER, defendants in error.

1. In order to take a case out of the operation of the statute, on the ground that the contract was not to be performed within one year, there must be such a part performance of it on the part of the plaintiff as would render it a fraud on him, by the refusal of the defendant to comply with the contract on his part.
2. Pleading to the merits waives process. (R.)
3. Under the sheriff's signature to the return of the sheriff as to part of the defendants, was a statement "the other defendants not to be found in the county." It not appearing who made it, it was held to have been made by the sheriff. (R.)
4. It is not a good objection to testimony taken by interrogatories, that the firm name of the witnesses, instead of their given names, is inserted in the commission, where they signed the interrogatories by their given names. Signing at the place where the commissioners should sign, is a good subscription to their answers. (R.)
5. The charge of the Court was divided up and numbered; in parts of it the lines were numbered 1, 2, 3, etc. It is a good assignment of errors thereon to say the Court erred in said parts and said lines, by saying he erred in charging as shown in said paragraphs, 1, 2, 3, etc., and in lines 1, 2, 3, etc. (R.)

Practice. Evidence. Statute of Frauds. Before Judge JOHNSON. Muscogee Superior Court. November Term, 1870.

Alfred O. Blackmar and Henry W. Chandler averred, that they were partners under the style of Blackmar & Chandler; that Aaron Burnett, Dan Fry, Henry G. Bryan, Loyd G. Bowers, William L. Stapler and Benjamin F. Markham, partners under the style of Burnett & Company, owed them $1,500 00, because, on the 7th of August, 1867, said firm employed plaintiffs as agents for the company, at $1,-500 00 *per annum*, said service to begin on the 1st of October, 1867, and end on the 1st of October, 1868, and plaintiffs made all necessary arrangements to carry out the contract, and entered upon the performance of the same, as agreed upon, and faithfully performed their part and offered to carry out the same, in good faith, but said defendants prevented

them. The petition was filed on the 20th of October, 1868. In attaching process, the Clerk undertook to attach, as a heading to it, the several names of the plaintiffs, as such, and of the defendants, as such, but left out the name of said Bowers. The process was, " The defendants are hereby," etc. There was a return of service upon Bowers, Stapler and Fry, and *under* the signature of the sheriff were these words : " The other defendants not to be found in the county." Who wrote it does not appear. It was signed by no one. The said defendants who were served, pleaded that they did not undertake and promise conjointly with said other defendants, as charged ; that they were not members of the firm of Burnett & Company at the time of making said contract; and that said contract was not in writing and not to be performed within a year from the date of making it, and was therefore void. The plaintiffs amended their declaration, by striking out " Burnett & Company," and inserting in lieu thereof, " The Burnett Line of Steamers." Stapler, for the other defendants, pleaded that Burnett, Fry, Bryan, Markham and himself, were not trading under the firm name last aforesaid. When the cause came on for hearing, Bowers moved to dismiss the cause as to himself, because there was no process as to him. He had pleaded before said amendment, and the Court overruled his motion. Bowers, Stapler and Fry then objected to going to trial then, because it was a suit against them and others jointly, and yet there was no return of *non est inventus* as to those others. This motion was overruled. They then moved to continue the cause, because of Fry's absence. They showed that they had used due legal diligence to have him present, and stated that they expected to prove by him that notice was given to plaintiffs, before the 1st of October, 1867, that defendants did not desire plaintiffs to perform said contract, and that plaintiffs did no act in the performance of said contract after the 1st of October, 1867. Plaintiffs' counsel admitted that Fry would so swear, and said they would not contest on the trial that he would so

swear, but would not admit that such facts were true, nor agree not to contest their truth on the trial. And upon this admission, the Court overruled the motion to continue. Plaintiffs' counsel proposed to read in evidence certain interrogatories taken out for said plaintiffs. These interrogatories began as follows:

"BLACKMAR & CHANDLER *vs.* THE BURNETT LINE OF STEAMERS.—In the Superior Court of said county.

"Interrogatories to be propounded to the plaintiffs in said case." The commission named the parties, as last aforesaid, and said, "Whereas, Blackmar and Chandler are material witnesses in said suit." They were signed as follows:

"Answered, sworn to and subscribed before us, this the 27th of July, 1870.

"GEO. W. A. BRANTLEY, *Com'r.*   [L. S.]
"S. F. JONES, *Com'r.*   [L. S.]

" *Witnesses :*
"BLACKMAR & CHANDLER,
"A. O. BLACKMAR,
"H. W. CHANDLER."

Defendants' counsel objected to these interrogatories, because no witness was named in the interrogatories nor in the commission, nor were the answers signed by any witness. The objections were overruled. Chandler was in Court, and they, therefore, objected to reading his answers to said interrogatories. This was also overruled. In these interrogatories these plaintiffs testified as follows: Burnett & Company were the husbands of the Burnett Line of Steamers, which steamers, to the best of their knowledge and belief, were owned by all of said named defendants. In August, 1867, Burnett, representing his firm as general agents of said line of steamers, and Fry, one of the owners in the line and managing Captain, verbally agreed to pay plaintiffs $1,-500 00, to act as exclusive agents for the line, from the 1st

of October, 1867, to the 1st of October, 1868. This sum was fixed upon to cover the expenses of a man to do the additional work consequent upon such engagement. Though the term did not begin till the 1st of October, 1867, plaintiffs, the better to carry out the contract, began to act as agents at once; the managers of the line advertised plaintiffs as their agents, in the newspapers, circulars and freight tariffs. Plaintiffs' duties, as such agents, consisted in soliciting freight, collecting freight-bills and distributing circulars, all which they faithfully did, up to the 2d of November, 1867. They employed an assistant at $1,200 00, for one year from the 1st of October, 1867, and paid him $1,200 00, and furnished, from their store, his family supplies for the year, at cost. They employed him solely because they had made such contract and needed him as an assistant to execute the contract. While they were engaged in performing their duties as such agents, without complaint of or notice to them, their agency was discontinued on the 2d of November, 1867. Nor had they any notice of such intention till they read in the *Daily Sun* newspaper: "The Burnett Through Line has no agent at Columbus, Georgia.—Burnett & Company, general agents, Apalachicola, Florida." They at once asked an explanation, and Burnett said they were going to send two of the boats to Texas, and would keep the two others, and tried to make a new contract, to pay plaintiffs $750 00 for acting as agents for these two remaining boats. Believing that they could be agents of those two without an assistant, and that they could get rid of their assistant, they agreed so to change the contract, if the $750 00 were secured. They would not secure the $750 00, and the parties had no further connection with each other. Stapler, one of the owners, prevented the removal of the two boats, by legal means. The taking of these boats to Texas was not thought of till some time in October, 1867, and that idea made defendants desire to get rid of them as agents.

Chandler then testified to the same things. Plaintiffs then

introduced Bowers, who testified that he owned stock in the Huntsman; Fry owned none in the Burnett and Jackson. The Huntsman, the Fry, the Burnett and the Jackson composed the line known as the Burnett Line, to distinguish it from a competing line of steamers. There was no community of profits or losses between them; each boat's accounts were kept separately. Burnett managed them all, he controlling the majority of the stock. Plaintiffs acted as agent for this line six months or a year. They acted as such after the 1st of October, 1867. He saw them so acting but knew nothing of said contract. Burnett acted as agent of his own accord, and witness and several stockholders objected to it. Here plaintiff closed his case.

The defendants introduced the files of said newspaper, in which, from the 1st of March to the 1st of November, 1867, there was an advertisement headed "Burnett Through Line," and signed "Blackmar & Chandler, Agents, Columbus, Georgia, Burnett & Company, General Agents, Apalachicola, Florida;" and they also read in evidence the copy of said paper of November the 2d, 1867, containing the declaration that said line had no agent at Columbus as aforesaid.

One Klink testified that plaintiffs did no service for the line in October, 1867, no boats went down the river and but one came up; that about the middle of September, 1867, he saw Fry go into plaintiffs' store to deliver them a letter notifying plaintiffs that defendants could not carry out the contract; it was written by Burnett; soon after the 1st of October, 1867, plaintiffs were told by Fry of having received said letter before the 1st of October, 1867, and they did not deny his statement.

Stapler testified that he owned an interest in the Huntsman and the Fry, but none in the other boats; that Fry was part owner of the Huntsman and Jackson; each boat's accounts were kept separately, and there was no community of profits or losses. The four boats were called The Burnett Line, to distinguish them from a competing line; Burnett con-

trolled a majority of the stock and did about as he pleased, took all the money and never paid out any. Burnett & Company was a firm in Columbus, Georgia, and Apalachicola, Florida, and had no interest in the boats. Some stockholders (Bowers and Markham) complained at Burnett's acting as agent, and Womack & Saulsbury sold out on that account. No boat of the line went down the river during October, 1867, and but one came up. This last statement was also testified to by the clerk of the Huntsman, and he said, in October, 1867, he refused to recognize plaintiffs as agents of the line and they seemingly acquiesced in his right so to do. Another witness testified that in January or February, 1867, plaintiffs sought the agency expecting to get pay for their services by the profits in selling ship stores, and the agency was obtained and plaintiffs acted under this contract thenceforward.

In rebuttal, Chandler swore that it was after the 1st of October, 1867, when Fry mentioned Burnett's letter, but said he would not show it because it was a shame, as plaintiffs had fully complied with their contract.

The Court charged the jury as follows:

1. Defendants deny that they made any such contract as alleged by the plaintiffs. Determine from the testimony whether Burnett was agent of defendants, and if he was and made such a contract it is as binding as if made by defendants.

2. Defendants say that, even if this contract were made, it was a verbal contract and not to be performed within a year from the time when it was made and is void by the Statute of Frauds. If it was a verbal contract, made on the 27th of August, 1867, and for a year's services to begin on the 1st of October, 1867, and end on the 1st of October, 1868, it falls within the operation of the Statute of Frauds and is void unless it falls within the following exceptions:

3. If plaintiff, on the 1st of October, 1867, entered upon the performance of said contract and did any act under said

contract, there has been a part performance of said contract and this would make it a valid contract and entitle plaintiffs to recover.

4. If plaintiffs entered upon the performance of said contract and continued to work under said contract until the 2d of November, 1867, and was then discharged by the defendants without just cause or prevented them from performing the contract, the law considers this as tantamount to performance and plaintiffs are entitled to recover the full amount stipulated to be paid for the whole year, with interest from the 1st of October, 1868.

5. The acts done by plaintiffs after the 1st of October, 1867, must have been done in pursuance of the contract to entitle them to recover. If these acts were done under the old arrangement they were not part performance and the case is not relieved from the operation of the Statute of Frauds. And if plaintiffs were notified, before the 1st of October, 1867, that the contract would not be carried out, this may be considered to determine whether such acts were done under the old arrangement or this contract.

The jury found for plaintiffs for $1,500 00, and interest and costs. Defendants sued out their writ of error, saying that the Court erred in refusing to dismiss the cause; in holding that the case stood for trial when there was no return of *non est inventus* as to the other defendants; in overruling the objections to said interrogatories, and in allowing them read when one of the witnesses was present; "in the 4th, 5th, 6th and 7th line of the first point charged; in the whole of the third point charged; in the whole of the fourth point charged; in the 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th and 16th lines of the fifth point charged, and in the whole charge as given." In the bill of exceptions the charge is divided up as aforesaid; in the parts just alluded to the lines are numbered on the margin. When the cause was called here, counsel for defendants in error objected to hearing the assignments of error, above quoted, because they did

not specify the errors complained of. The Court said they would hear all the points and consider this when they passed upon the case.

JOHN PEABODY; R. J. MOSES, for plaintiffs in error. The cause was not ready till all the defendants were served or returned *non est inventus:* Revised Code, section 3274. As to continuance—Cheney *vs.* Smith & Alexander, last term. Statute of Frauds: Revised Code, section 1877; 31st Georgia Reports, 510. Part performance: 14th Georgia Reports, 683; 30th, 96; Revised Code, section 1941, p. 3; Brown on Frauds, section 451; 15th Georgia Reports, 450; 3d Hill, N. Y., 130. Plaintiffs were entitled to value of their services: 26th Georgia Reports, 552; 31st Georgia Reports, 31. Damages not necessarily the amount stipulated: 41st Georgia Reports, 71.

SMITH & ALEXANDER; M. H. BLANDFORD, for defendants.

WARNER, Judge.

This was an action brought by the plaintiffs against the defendants, as partners, using the firm name of "Burnett Line of Steamers," to recover for services alleged to be due them under a *parol* contract. The defendants pleaded that the alleged contract was not to be performed within one year from the making thereof. On the trial of the case, several exceptions were taken by the defendants, to the rulings of the Court, as set forth in the record, and they also excepted to the charge of the Court to the jury. That part of the charge complained of, is in the following words: "If the plaintiffs, on the 1st of October, entered on the performance of said contract, and did *any act* under said contract, then there has been a part performance of said contract, and this would render it a valid contract and entitle the plaintiffs to recover." This charge of the Court was error, in view of the

facts contained in the record. The Court should have charged the jury, that if there had been such a part performance of the contract on the part of the plaintiffs as would render it a fraud on them, by the refusal of the defendants to comply with the contract on their part, that would render it a valid contract, and entitle the plaintiffs to recover.

There was no error in the rulings of the Court on the other exceptions specified in the record.

Judgment reversed.