## United States Fidelity & Guaranty Company v. Shepherds Home Lodge No. 2, et al.

(Decided March 23, 1915.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, No. 3).

1. Pleading—Defense.—The court erred in sustaining demurrer to certain paragraphs of the answer where it set up a good defense, but where the case was afterwards presented and considered by the court and jury as if the demurrer had not been offered or sustained, the defendant was not prejudiced.

2. Insurance—Guaranty or Indemnity—Contract.—Where a bonding company issued a bond to a lodge for one year, guaranteeing the fidelity of its officers, and continued to issue such bonds as they matured, the contract was a continuing one, and in an action upon the one last issued, the question as to whether it was continued by reason of the false and fraudulent statements made by the lodge officials was for the jury.

3. Insurance—Guaranty or Indemnity.—Where a letter was written by the bonding company to the insured which treated the contract of insurance as a continuing one, and the insured so understood it, such letter had the effect to make the bond issued a continuation of the original bond, and the lower court properly so held.

4. Insurance—Guaranty or Indemnity.—Where, in order to obtain a renewal of the bond, the lodge certified to the bonding company that it had examined the books of its officers and that the same were found correct in every respect, and that all monies coming into their hands had been accounted for, it was a question for the jury as to whether the lodge made truthful statements in the certificates for renewal, and whether ordinary care was used to know whether the statements were true.

DALLAM, FARNSLEY & MEANS for appellant.

SELLIGMAN & SELLIGMAN for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The appellee is an unincorporated lodge or fraternal order, and with dues collected from its members pays to them certain benefits. One Gertrude Sturzel was treasurer of the order from March, 1909, until August, 1911. The appellant executed to the appellee a bond to the effect that Gertrude Sturzel would faithfully account for all moneys that came into her hands as treasurer. The first bond was executed March 26th, 1909.

On March 19th, 1910, the appellant executed and delivered to appellee another bond in terms identical with the first one. This bond was No. 93048-10. On March 31st, 1911, appellant executed another bond for another period of one year and in terms identical with the two bonds above referred to. This last writing bears the same serial number, viz., 93048-10. The indemnity provided in these bonds was $1,000. Between March 26th, 1910, and August, 1911, when Mrs. Sturzel ceased to serve as treasurer, she misappropriated about $1,100. Nearly all of the money was misappropriated during the period of the second bond year ending March 26th, 1911. During the period of the last bond the remainder was misappropriated. The defalcation was not discovered until August, 1911, during the period of the last bond, and notice was immediately given to appellant. This suit grows out of appellant's refusal to pay the bond. The several bonds were treated by the lower court as one continuing contract. The jury returned a verdict for $1,000 in favor of the lodge, and the guaranty company appeals.

Appellant's contention is that the lower court erred in sustaining demurrers to the affirmative paragraphs of the answer. The answer set up in bar and by way of estoppel certain certificates given by the lodge to the guaranty company at the end of each year and on which the renewals were issued. It was claimed that these certificates operated as a release from liability on account of any defalcation occurring in the previous year, and, on the allegation that the statements were false, it was claimed that the lodge was estopped from asserting liability on the new bond issued on the faith of the certificate.

Except as to dates, these certificates are alike, and we copy one of them:

"To the United States Fidelity and Guaranty Company:

"This is to certify that the books were examined and accounts of officers as per schedule attached were examined on the 31st day of December, 1910, and found correct in every respect, all moneys and property under their control or custody being accounted for, with proper securities and funds on hand to balance all accounts, and none of them are now in default.

"They have performed their duties in an acceptable and satisfactory manner, *and we know of no reason why the Guarantee bond should not be continued.*

"Dated at Louisville, Ky., this Mar. 27th, 1911.

"Name of Lodge, Shepherds Home Lodge.

"By John W. Adams, Scribe."

These certificates were issued in response to renewal notices sent out by the Guaranty Company, one of which is as follows:

"Fraternal Order Department.

"United States Fidelity and Guaranty Company.

Home Office, Baltimore, Md.

Baltimore, February 1, 1911.

"No. 93048-10.

"To Shepherds Home Lodge No. 2, S. of B.,

Louisville, Ky.

Renewal.

"Dear Sir:

"We hereby notify you that schedule Bond No. 93048-10 for $1,000, issued by this company guaranteeing the fidelity of your officers as per schedule attached will expire on the 26th day of March next.

"The premium, $4.40, should be paid on or before the date of expiration and a *continuation certificate or a new bond secured,* otherwise the bond will lapse.

"Kindly fill in and sign the certificate below and forward to Thos. S. Dugan, Louisville, Ky., with remittance for premium, *when a continuation certificate or a new bond will be sent you.*

"Yours respectfully,

JOHN R. BLAND,

President."

The answer denies that the bond was renewed or continued from time to time; on the contrary, it avers that each bond was a separate contract, and that the lodge was only entitled to recover upon one bond and for a shortage discovered within three months after the period covered by it. The effect of this contention is to limit recovery to the shortage occurring during the period of the last bond; that is, after March 26th, 1911. That part of the bond bearing upon this contention is as follows:

"Now, therefore, this bond witnesseth that for the consideration of the premises the *surety shall during the term above mentioned, or any subsequent renewal of such term,* and subject to the conditions and provisions herein contained, at the expiration of three months next, after proof satisfactory to the company, as hereinafter mentioned, make good and reimburse to the said obligee such pecuniary loss as may be sustained by the obligee by reason of the dishonesty of any or either of the principals named upon said schedule, or added thereto, as hereinafter provided in connection with his duties, as specified on said schedule, amounting to embezzlement or larceny, and which shall have been committed during the *continuance of said term, or of any renewal thereof, and discovered during said continuance, or within three months thereafter,* or within three months from the death or dismissal or retirement of such principal from the service of the obligee, within the period of this bond, whichever of these events shall first happen, the surety's liability on account of any one principal in no case to exceed the sum for which he shall have been specifically guaranteed as hereinafter provided."

Before considering the question whether the three bonds amount to but one contract, we will notice appellant's criticism of the lower court for sustaining demurrer to the two affirmative paragraphs of its answer. In these paragraphs appellant plead the issual of these bonds as separate and distinct contracts, and that there is a distinct liability fixed by the terms of each, and no continuing liability on account of any relation they may bear to each other. It is further alleged that the application for the renewals—that is, the certificates above referred to—were false and fraudulent, and that by such fraud and deceit appellant was induced to issue the bonds covering the periods in which the loss occurred. The plea of false and fraudulent application for renewal was material and presented a good defense. But from an examination of the record, it is apparent that the ruling of the court in this regard did not affect the merits of the case. The lodge disregarded the demurrers, and by reply put in issue every affirmative allegation. Proof was heard on these issues, and appellant's case was presented and considered by the court and jury as if the demurrer had not been offered or sustained. By the instructions the court submitted the question as to whether

the officers of the lodge in good faith believed the statements contained in the certificates were true, and whether they used ordinary care to know whether the statements were true. Technically, the court erred in sustaining the demurrer, but, in the practice of the case, appellant was not at all prejudiced by the error.

The parties likewise treated the demurrer to that part of the answer which undertook to limit liability to shortage occurring while the last bond was in force. The bonds, certificates, and renewal notices were all introduced as evidence. There was no dispute as to the facts. The only controversy was about the effect to be given them. The court, as a matter of law, and we think properly, treated the contract as a continuing one, and submitted to the jury the sole issue as to whether it was continued or renewed by reason of the false or fraudulent statements made by the lodge and its officials. On this question the case is exactly like the case of United States Fidelity & Guaranty Co. v. Citizens Bank of Monticello, 147 Ky., 285, where the bond and renewals were held to constitute one contract. In that case the obligation was that the surety:

"Shall during the term above mentioned or any subsequent renewal of such term * * * make good and reimburse * * * such pecuniary loss as may be sustained * * * or which shall have been committed during the continuance of said term, or of any renewal thereof, and discovered during said continuance or within three months thereafter."

The letter written by the company on February 1st, quoted above, treats the present contract as a "Renewal," and requests payment of premium, so that a "Continuation Certificate or a new Bond" may be issued. The words "Renewal," "Continuation Certificate" and "New Bond" must have been used synonymously, and the company clearly intended them as renewals with the effect which the court gave them. The officers of the lodge so considered them, for the certificate of fidelity, which we have already copied and referred to, concludes with the statement: "We know of no reason why the guarantee bond may not be continued."

We do not believe the facts of this case bring it within the rule of DeJarnett v. Fidelity & Casualty Company, 98 Ky., 558. In that case indemnity was afforded from year to year by renewal receipts, and it was spe-

cifically stated in each that only the annual period was covered.  The court held:

"Such contracts, standing as distinct and separate contracts, the rights of the parties must be determined under them as such.  A renewal of the bond did not alter, change, limit or increase the rights of the parties under the bond, nor did such renewal increase or limit the time for the performance of any act which is required to be done by the parties to maintain their rights under the bond."

In the Monticello Bank case, *supra,* renewal notices were introduced in evidence.  These notices used practically the same language as in the case at bar.  The bond itself was different from the DeJarnett bond and almost exactly like the bond in the present case.  Under this state of facts the court held that the bond and renewals constituted but one contract and it covered the period of consecutive years over which the renewals were issued.

While it is true in the present case at the end of each year a new bond was issued instead of a renewal receipt, but each bond was in identical terms, and the last two bore the same serial number, and by them the guaranty company obligated itself to reimburse for any loss occurring "during the term above mentioned (the annual period) or any subsequent renewal of such term."  The obligation is repeated in the bond as follows:

"During the continuance of said term, or of any renewal thereof, and discovery during the said continuance, or within three months thereafter."

As was noted in the Monticello Bank case, the idea of renewal and continuation was expressed in the correspondence and certificates, types of which we have already copied.  We are unable to distinguish this case from the Monticello Bank case, for we cannot understand the meaning of the language used, or why it was used, if it was not intended to make each bond a continuation of the one preceding, and altogether constitute one contract affording indemnity in the sum named.  We do not mean that the several bonds were cumulative in amount, for it was not intended that the guaranty company added $1,000 to its liability each year.  No matter how much the defalcation might amount to during the continuation of the contract, the company was not liable in excess of $1,000.

Whether the lodge made truthful statements in the certificates for renewal, and whether ordinary care was used to know whether the statements were true were questions for the jury, and the jury found that the lodge did exercise ordinary care to determine whether the treasurer had faithfully performed her duties, and in good faith believed that she did. An inspection of the record convinces us that the evidence sustains the finding of the jury. The lodge appointed committees composed of members to make semi-annual examinations of her books and accounts. While the members who made these examinations were not much experienced in business or accounts, yet the evidence discloses that they employed means reasonably sufficient to test the accuracy and honesty of her books. Her cash receipts were checked over with the books of other officials through whom the money was paid to her. Her disbursements were evidenced by receipts, and they were checked against warrants drawn upon her by the secretary. From these comparisons the cash balance in her hands was tested by her bank deposit book, which she exhibited; and at each semi-annual examination the balance on hand, as disclosed by the lodge books, warrants and receipts, conformed to her bank balance, as disclosed by the pass book. Had the committee gone to the bank and called for her balance, the shortage would have been discovered, for the deposit book which Mrs. Sturzel kept in the lodge and presented to the committee was a forgery; that is, she had two pass books, one for use at the bank and one which she forged for use with the examining committees. As is well known, these deposit books consist of figures and practically no writing. Nothing is shown to justify a suspicion of forgery on the part of the committee, and it is evident that Mrs. Sturzel had the confidence of every member of the lodge. There is nothing in the bond requiring Mrs. Sturzel to keep the funds in a bank, or requiring the lodge to examine her bank account. In order to obtain renewals, they represented to the company that her books and accounts had been examined and found correct, and all money in her custody had been accounted for. The evidence shows that the lodge and its members believed in good faith that the statements they made in this regard were true, and it was for the jury to say whether the examinations made of her books and papers showed

ordinary care on the part of the lodge to know whether the statements were true. Fidelity & Deposit Co. v. Campion Ice & Storage Co., 133 Ky., 74; U. S. F. & G. Co. v. Bank of Monticello, 147 Ky., 285. The court submitted these questions to the jury, by instructions which are beyond criticism, and we are not disposed to disturb their finding.

The judgment is, therefore, affirmed.