## FRANK E. PEARSON v. UNITED STATES FIDELITY AND GUARANTY COMPANY.[1]

November 2, 1917.

No. 20,522.

**Fidelity insurance — renewal construed as extension of bond.**

1. Defendant, for a premium paid, issues bonds guaranteeing to employers the fidelity of employees. It so issued a bond to the bank represented by plaintiff, and, from time to time, gave written renewals thereof. It is *held* that the transactions did not constitute separate bonds. The effect of the renewals was merely to extend the time covered by the bond.

**Same — conditions of insurance to be attached to bond.**

2. Section 1616, R. L. 1905 (section 3292, G. S. 1913), is applicable to the bonds or guarantee contracts issued by defendant.

**Judgment notwithstanding verdict denied.**

3. Defendant was not entitled to judgment notwithstanding the verdict, on the ground that it conclusively appeared that the assured had failed to carry out the conditions of the bond.

**Verdict — evidence — refusal to give requests.**

4. The verdict is sustained by the evidence and is not contrary to the law as given by the court. The requests refused were not appropriate to the issues presented or else were so involved as to be of doubtful help to the jury.

**No prejudicial error.**

5. The record discloses no error prejudicial to defendant.

Action by the superintendent of banks of the state of Minnesota in the district court for Hennepin county to recover $10,000 upon defendant's bond to the Osseo State Bank of Osseo. The facts are stated in the opinion. The case was tried before Hale, J., who at the close of the testimony denied defendant's motion for a directed verdict on the ground that it conclusively appeared plaintiff had such notice of the defalcation as

[1]Reported in 164 N. W. 919.

would require him to notify the surety, and not being notified by the surety defendant was released, and a jury which returned a verdict for the amount demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Cray & Eaton,* for appellant.

*Lyndon A. Smith,* Attorney General, *Harrington L. Schmitt,* Special Attorney General, and *Kerr, Fowler, Schmitt & Furber,* for respondent.

HOLT, J.

Defendant is a Maryland corporation engaged in the business of bonding or guaranteeing to employers the fidelity of their employees. In January, 1912, it issued its bond in the sum of $10,000 to the Osseo State Bank guaranteeing it for one year against pecuniary loss sustained by reason of the fraud or dishonesty of Joseph B. Thompson, its then assistant cashier. Each year thereafter the bond was continued in force by a renewal certificate, the last being dated January 2, 1915. In July, 1915, it was discovered that Thompson had embezzled large sums from the bank. The state superintendent of bands took charge of the institution, and, after ascertaining the situation, brought this action on the bond to recover for the defalcation. A verdict for the full amount was returned. Defendant moved in the alternative for judgment notwithstanding the verdict or a new trial. The motion was denied and defendant appealed.

The numerous errors assigned have been grouped and discussed by appellant under four or five propositions:

1. It is insisted that erroneous rulings were made because a wrong construction was placed on the bond. The learned trial court held, in effect, that the original bond with the renewals constituted one continuing obligation extending from January, 1912, until January, 1916. Defendant contends that the original bond and the several renewals are separate contracts, so that, under the provisions thereof, no liability could be asserted except for defalcations occurring subsequent to the last renewal. The question raised can hardly be said to go to the merits of this suit,

for it is clear from the record that Thompson's defalcations subsequent to January 2, 1915, exceeded the penalty of the bond. But it is claimed that the construction placed by the court upon the contract allowed plaintiff to prove the extensive peculations of Thompson prior to January, 1915, thereby prejudicially affecting the jury upon the other issues of the case. The parts of the bond bearing upon the solution of the question now presented are these:

"That for the consideration of the premises the Company shall, during the term above mentioned or any subsequent renewal of such term, and subject to the conditions and provisions herein contained, at the expiration of three months next, after proof satisfactory to the Company, as hereinafter mentioned, make good and reimburse to the said Employer, such pecuniary loss as may be sustained by the Employer by reason of the fraud or dishonesty of the said Employee in connection with the duties of his office or position amounting to embezzlement or larceny, and which shall have been committed during the continuance of said term, or of any renewal thereof, and discovered during said continuance or of any renewal thereof, or within six months thereafter, or within six months from the death or dismissal or retirement of said Employee from the service of the Employer within the period of this Bond, whichever of these events shall first happen; the Company's total liability on account of said Employee under this Bond or any renewal thereof, not to exceed the sum of Ten Thousand Dollars. * * *

"That the Company, upon the execution of this Bond, shall not thereafter be responsible to the Employer, under any bond previously issued to the Employer on behalf of said Employee, and upon the issuance of any Bond subsequent hereto upon said Employee in favor of said Employer, all responsibility hereunder shall cease and determine, it being mutually understood that it is the intention of this provision that but one (the last) Bond shall be in force at one time, unless otherwise stipulated between the Employer and the Company."

The last renewal reads as follows:

## CONTINUATION CERTIFICATE
Series 1015   Bank Department Amount $10000.00
Premium 25.00
United States Fidelity and Guaranty Company 5981,
Home Office, Baltimore, Md.

In consideration of the sum of twenty-five dollars the United States Fidelity and Guaranty Company hereby continues in force 'Bond 300,-420-12 in the sum of ten thousand dollars, on behalf of Joseph B. Thompson, cashier, in favor of Osseo State Bank, Osseo, Minn., for the period beginning the 2nd day of January, 1915, and ending on the 2nd day of January, 1916, subject to all the covenants and conditions of said original bond heretofore issued, dating from the 2nd day of January, 1912.

Provided, however, that the Company's liability on the original bond and all its renewals shall not exceed the penalty of the original bond.

Witness the signature of the president and assistant secretary, this 15th day of October, 1914.                              John R. Bland,
    (Corporate Seal)                     .                        President.

Wm.F.Morgan,
Assistant Secretary.

Authorities need not be cited to the well settled doctrine that indemnity contracts of this sort and the ordinary life or fire insurance policies are governed by the same rules of construction. Ambiguities therein are resolved in favor of the assured. The caption of the renewal instrument indicates a continuance or extension of an existing obligation. In the body of the writing, the instrument delivered January 2, 1912, is specifically continued in force with the provision that the defendant's "liability on the original and all its renewals shall not exceed the penalty of the original bond." It does not treat a renewal as equivalent to the issuance of a new bond. The reading of the last paragraph quoted above from the bond increases the ambiguity, for it speaks of the execution of separate bonds and makes the penalty named in the last bond so executed the limit of recovery. In the paragraphs first quoted only one bond is mentioned, and it does not speak of the renewal of the bond but concerning the renewal of the term or period during which the bond is to be in force. With the provisions for renewals without the formality of the execution of a new bond, with the last renewal certificate making the penal sum

of the original bond the total insurance of all renewals, and with the equivocal position of the six-month clause, within which defalcation must be discovered if indemnity is to be had, we think the assured may well have concluded that there was at all times a continuous protection, so that for any defalcation during the whole period the company would respond if the defalcation was detected within six months after the relation of assured and assurer terminated, provided timely notice was given as required in the bond. We hold that the renewals had merely the effect of extending the term mentioned in the bond.

This is the construction placed upon like bonds of defendant and the renewals thereof in Green v. U. S. Fidelity & Guaranty Co. 135 Tenn. 117, 185 S. W. 726; U. S. Fidelity & G. Co. v. Citizens Nat. Bank, 147 Ky. 285, 143 S. W. 997; U. S. Fidelity & G. Co. v. Shepherd's Home Lodge No. 2, 163 Ky. 706, 174 S. W. 487; Rankin v. U. S. Fidelity & G. Co. 86 Oh. St. 267, 99 N. E. 314; Chatham Real Est. & Imp. Co. v. U. S. Fidelity & G. Co. 18 Ga. App. 588, 90 S. E. 88. A somewhat similar bond and renewal were construed as one contract in American Bonding Co. v. Morrow, 80 Ark. 49, 96 S. W. 613, 117 Am. St. 72.

There are authorities to the contrary: Gilmore & P. R. Co. v. U. S. Fidelity & G. Co. 208 Fed. 277, 125 C. C. A. 477; Proctor Coal Co. v. U. S. Fidelity & G. Co. (C. C.) 124 Fed. 424. The force of City of Brunswick v. Harvey, 114 Ga. 733, 40 S. E. 754, as an authority for appellant, is entirely destroyed by what is said by the court in Chatham Real Est. & Imp. Co. v. U. S. Fidelity & G. Co. supra.

In passing it may be said, that defendant, by paragraphs 8 and 9 in the answer, virtually admits the existence of but one single contract continuing from its inception in 1912 to and including the last renewal in 1915.

2. The next group of errors assigned is based upon the ruling that section 1616, Revised Laws of 1905 (section 3292, G. S. 1913), is applicable to this bond. This section reads:

"A statement in full of the conditions of insurance shall be incorporated in or attached to every policy, and neither the application of the insured nor the by-laws of the company shall be considered as a warranty or a part of the contract, except in so far as they are so incorporated or attached."

Chapter 175, Laws 1895, p. 417, § 52, reads:

"In all insurance against loss by fire the conditions of insurance shall be stated in full, and neither the application of the insured nor the by-laws of the company shall be considered as a warranty or a part of the contract, except so far as they are incorporated in full into the policy."

It is to be noticed that in the chapter mentioned, being a codification of the insurance law, section 27 (p. 403), thereof states under seven subdivisions the different purposes for which insurance companies may be formed to do business in this state, and the fourth subdivision is: "To guarantee the fidelity of persons in position of trust, private or public, and to act as surety on official bonds and for the performance of other obligations." Other provisions in the same chapter indicate that corporations engaged in the business of defendant come within its regulations and are to be regarded as insurance companies whether its contracts be known under the name of policies or bonds. With this definition of insurance companies it would have been plain that, had said section 52 read as does section 1616 in Revised Laws 1905 (section 3292, G. S. 1913), it would have applied to the bond here. But clearly the intention of the legislature of 1895 was to confine the provisions of said section 52 to insurance contracts. When the language so confining was deliberately dropped out in the revision of 1905 and the section placed in the insurance chapter under the "Provisions Common to all Companies," the inference is almost conclusive that the intention was to make the section applicable to all companies dealing in insurance as defined in the preceding section 1597, R. L. 1905 (section 3258, G. S. 1913). True, it has been held that the section in question does not apply to fraternal beneficiary associations (Louden v. Modern Brotherhood of America, 107 Minn. 12, 119 N. W. 425), but that conclusion was arrived at because of the fact that under sections 1687, 1695, 1703 and 1710, R. L. 1905, such corporations were excepted from the general provisions applicable to the ordinary life insurance companies which now unquestionably come within section 1616, R. L. 1905 (section 3292, G. S. 1913).

The instant case exemplifies the wisdom of the change. It is sought to bind the bank by certain promises of monthly examinations, by the directors, made in the application. The application is in the hands of the defendant. The bond or insurance was continued from year to year.

Neither the original bond nor the renewals received by the bank disclose the contents of the application. If the officer or officers who made the application have been displaced, it is likely that the ones who succeeded knew nothing of the promises therein contained. The same reasons for requiring all the terms of the contract to appear upon the instrument itself exist in the case of the obligations issued by defendant as in the case of the ordinary fire or life insurance companies' contracts. Indeed, the indemnity written by defendant is in the nature of insurance under our decisions. Brandrup v. Empire State Surety Co. 111 Minn. 376, 127 N. W. 424; George A. Hormel & Co. v. American Bonding Co. 112 Minn. 288, 128 N. W. 12, 33 L.R.A. (N.S.) 513; Standard Salt & Cement Co. v. National Surety Co. 134 Minn. 121, 158 N. W. 802.

That the section in question applies to ordinary insurance policies is beyond doubt. We hold it applicable to the contract or bond of defendant. A similar Iowa statute was similarly construed in U. S. Fidelity & G. Co. v. Egg Shippers S. B. & F. Co. 148 Fed. 353, 78 C. C. A. 345.

It follows that the promises or warranties made by the bank in the application cannot be considered as part of the contract, because not attached to or incorporated in the bond. Therefore the failure of the directors to make monthly examinations of the bank accounts or to pass upon the discounts or loans before the same were made could not avail as a defense. Nor do we think section 3300, G. S. 1913, makes the application admissible. It reads: "No oral or written misrepresentations made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with the intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss." There is nothing in the pleading or proof tending to show intent to deceive or defraud, or any misrepresentation of an existing fact. The promises in regard to future acts, if they could have been shown, might have become warranties in the contract. Hunt v. Fidelity & Casualty Co. 99 Fed. 242, 39 C. C. A. 496. But, under the pleadings and evidence received and offered, they could not be considered misrepresentations inducing the contract.

3. Defendant was not entitled to judgment notwithstanding the verdict. Whether the bank discovered any act of Thompson, giving rise

to a claim under the bond, and failed to notify defendant thereof at the earliest practical moment, or whether, when the defalcation was discovered, such notice was given, or whether immediately, upon defendant's request, all the facts were laid before it, were questions of fact, properly submitted to the jury. It cannot be said as a matter of law that there was such delay or omission as to discharge defendant. The instructions of the court upon the issues of knowledge and notice are in accord with the decision in Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 22 Sup. Ct. 833, 46 L. ed. 1193, cited by appellant. That case also meets the contentions that there was here such negligence of the officers of the bank, in respect to the discovery of the defalcations, as to amount to bad faith or a discharge of the bond. Defendant knew when it executed the bond that the obligee was a small country bank and that Thompson and one other person alone transacted its business. The directors and officers of such an institution are not, as a rule, expert bookkeepers. The record conveys a strong impression of diligence and faithful attempt on the part of all officers connected with this bank, except Thompson, to perform their full duty. When the repeated examinations of experts from the office of the state superintendent of banks failed to detect any misappropriation, is it reasonable to insist that the farmers and merchants who composed the directorate of this bank should have done so or be charged with gross negligence?

4. The verdict is claimed to be against the law and the evidence. An unprejudiced examination of the record will convince any reasonable person that there is ample evidence to sustain the verdict, and that it is not contrary to the law as given to the jury. The instructions given presented the issues in a clear and terse manner, and adequately covered all the phases of law applicable thereto. We discover therein no error that could have prejudiced the defense. The charge is not open to the criticism that it is argumentative. Numerous and lengthy instructions were requested and refused. Most of these contain correct abstract propositions of law, but, under the evidence, would be of doubtful propriety, and likely more confusing than helpful to a jury. The general objection to the refused requests is that the duties and responsibilities of the directors to the bank or to bank creditors was sought to be made the deter-

mining factor in this lawsuit instead of the obligation of defendant under the bond in suit.

5. It is impossible to attach any importance to the manner in which the proof of loss was addressed. It arrived at the proper destination and was acted upon by defendant. The misunderstanding between court and counsel as to the latter's reading of the paragraph of the bond wherein a certain word occurred seems not to be worthy of comment. In no view could the incident have helped or harmed either litigant.

We find no error.

The order is affirmed.