## AMERICAN INDEMNITY CO. v. MEXIA INDEPENDENT SCHOOL DIST.

### No. 1152.

Court of Civil Appeals of Texas. Waco.
March 3, 1932.

Rehearing Denied March 31, 1932.

Nat Harris, of Waco, for appellant.

C. S. & J. E. Bradley, of Groesbeck, for appellee.

### ALEXANDER, J.

The Mexia independent school district brought this suit against O. P. Arrington, as principal, and the American Indemnity Company, as surety. Arrington was the former tax collector of the district, and the American Indemnity Company was the surety on his bond. The suit was to recover funds alleged

to have been misapplied or embezzled by Arrington. The trial was before the court and resulted in judgment for the plaintiff against the defendants for the sum of $30,263.62. The American Indemnity Company appealed.

■ The plaintiff alleged that it was an independent school district of the state of Texas, duly incorporated and existing in Limestone county under the laws of the state of Texas. There was no proof that the district was incorporated nor as to the manner of its incorporation, and appellant insists that by reason thereof the plaintiff was not entitled to recover. Revised Statutes, article 1999, provides that, where it is alleged that a corporation is duly incorporated, such allegation shall be taken as true unless denied under oath whether such corporation is a public or private corporation and however created. We think the above statute applies regardless of the kind of corporation, and that the manner of its incorporation is immaterial. Houston Water Works v. Kennedy, 70 Tex. 233, 8 S. W. 36. The purpose of the statute was to avoid the necessity of proving immaterial matters over which there was no real controversy and to force the parties to center their efforts on the real issues of the case. The assignment is not well taken.

■ The funds misappropriated by Arrington were collected by him as taxes claimed to be due the school district. The appellant contends that it was necessary for the district to allege and prove that it had authority to levy taxes and had made a legal levy, and that the funds received by Arrington were actually due the district by the property owners as such taxes. The bond bound the surety company to make good and reimburse the district for "all pecuniary loss sustained by the obligee, of money, securities or other personal property in the possession of the principal or for the possession of which he is responsible, by any act of dishonesty on the part of said principal in the discharge of the duties of his office or position as set forth in said statement referred to, amounting to larceny or embezzlement." The funds collected by Arrington were received by him by virtue of his office as tax collector and as taxes claimed to be due the district by the property owners for the use and benefit of the district, and it was his duty to account to the district for such funds, regardless of whether they were legally or illegally collected from the property owners. He was the agent of the district in collecting the taxes, and whatever came into his hands as such became the property of his principal. If any of such taxes were illegally collected from the property owners, the district and not Arrington would be responsible for a return thereof to the property owners. The district therefore became entitled to the funds regardless of whether they were legally collect-

ed from the property owners, and was entitled to recover from the collector's surety, upon his failure to account for said funds. Webb County v. Gonzales, 69 Tex. 455, 6 S.W. 781; Tarrant County v. Rogers, 104 Tex. 224, 135 S. W. 110, 136 S. W. 255; County of Galveston v. Galveston Gas Company, 72 Tex. 509, 10 S. W. 583.

■ The defendant contends that the plaintiff failed to notify it of the shortage within the time provided for in the policy. The contract provided that the company should be notified of any shortage within ten days after discovery thereof by the obligee, unless the law of the state fixed a longer period, and in that event the notice should be given on the earliest date permitted by law. Under Revised Statutes, article 5546, the obligee had ninety days in which to give such notice. The shortage was discovered on August 2, 1929. The company was notified on September 2, 1929, and within less than ninety days after the discovery of the shortage. The notice was therefore given in time. Moreover, the defendant failed to plead under oath the lack of such notice. Under the statute, in the absence of such a sworn plea, notice is presumed. Revised Statutes, article 5546; Francis v. International Travelers' Ass'n (Tex. Civ. App.) 260 S. W. 938; Id., 119 Tex. 1, 23 S.W.(2d) 282; Ætna Casualty & Surety Co. v. Austin (Tex. Civ. App.) 285 S. W. 951, par. 8; Id. (Tex. Com. App.) 300 S. W. 639.

■■ The appellant further contends that the school board failed to discover the shortage and to present proper proof thereof to the bonding company within the time provided for in the policy. The bond was issued in 1925 and originally covered a period of one year from August 28, 1925, to August 28, 1926. The bond provided: "If this bond shall be renewed or continued in force by agreement of the parties for a longer period than above specified, the surety shall not be liable for any act of dishonesty on the part of the principal, such as is specified above, unless such act of dishonesty shall be discovered during the period, original or renewal, in which it was committed, or within six months after the end of the period in which it was committed, or within six months after the termination of this bond, or any renewal thereof by cancellation or by the death, dismissal or retirement of the principal from the service of the obligee, whichever of said events shall first happen." The bond was renewed and extended from year to year, not by the delivery of a new bond, but by "continuation certificates." The last renewal being from August 28, 1928, to August 28, 1929. The tax collector retired from the service of the school district on August 2, 1929, before the expiration of the last renewal. The suit was to recover on shortages that occurred

during each of the four contract years. None of the shortage was discovered until August 2, 1929, and the company therefore contends that the plaintiff was not entitled to recover for the shortage that occurred during the first three years, because same was not discovered within six months after the termination of each of said years.

In the first place, we think the bond was a continuous one covering a period of four years, and that there was but one bond, which terminated on August 2, 1929, and since the shortage was discovered and proof thereof made to the company within six months after that date, it was discovered and the proof was made within six months after the "termination of this bond" within the meaning thereof. It will be noted from the provisions of the bond heretofore quoted that it was contemplated that the bond could be "continued in force by agreement of the parties for a longer period" than one year. The bond does not provide that it may be "renewed for another term," but provides that it may be "continued * .* * for a longer term." This evidences an intention that there was to be but one term, regardless of the number of continuances, and that such term might be extended or made longer by agreement of the parties. The bond was actually continued in force, not by the delivery of a new and different bond, but by "continuation certificates." The provisions of these "continuation certificates" throw light upon the intention of the parties. They provide that the company "hereby continues in force" the original bond, subject to the conditions thereof, "but the liability hereby assumed is not cumulative in amount; the aggregate liability under the original bond and all renewals being limited to the amount specified in the original bond." The original bond was for $50,000. If, as the defendant contends, there were four separate bonds, the total liability of the company would be $200,000 for the four years, whereas, under the continuation certificates, the company's liability was limited to $50,000 for the entire four years. If the company's contention be true, it made four separate bonds for $50,000 each, and yet it only assumed a total liability of $50,000 for the entire four years. The company, by wording the bond as it did, was evidently undertaking to preserve the one term idea for the purpose of avoiding an accumulated liability in a sum equal to the aggregate amount of the original bond and the several renewals thereof. In this it apparently succeeded, but in doing so it lost the right to contend that there were four separate bonds covering four separate periods. The fact that the renewal certificates bore the caption, "continuation certificate," indicates a continuation of an existing agreement. The words, "continue in force," as used therein, clearly indicates that it was the intention of the parties to ex-

tend or continue the duration or term of the original bond and not to make a new contract. Under facts almost identical with these, it has been held that there was but one bond covering the entire period, and that the assured may well have concluded, especially in view of the ambiguous provisions hereinafter referred to, that there was at all times a continuous protection, so that for any defalcation during the whole period the company would respond if the shortage was discovered and the company notified thereof within six months after the relations of the parties terminated. Grand Lodge, U. B. of F., v. Massachusetts Bonding & Ins. Co., 324 Mo. 938, 25 S.W.(2d) 783, 789; Pearson v. U. S. Fidelity & Guaranty Co., 138 Minn. 240, 164 N. W. 919 and cases there cited; U. S. Fidelity & Guaranty Co. v. Shepherd's Home Lodge No. 2, 163 Ky. 706, 174 S. W. 487; Williams v. Clark, 18 Ga. App. 583, 90 S. E. 88; John Church Co. v. Aetna Indemnity Co., 13 Ga. App. 826, 80 S. E. 1093.

■■ In addition to this, the terms of the bond, fixing the time in which the shortage must be discovered, are ambiguous. The phrase, "whichever of said events shall first happen," as used in the above-quoted provision of the contract, refers to the termination of the company's liability "by cancellation or by the death, dismissal or retirement of the principal" and not to the time within which the shortage must be discovered. The alternative provisions of the bond, connected as they are by the word "or," apparently give the assured the option of discovering the shortage either within six months after the termination of the period in which it was committed, or within six months after the termination of the bond or within six months after the termination of the last or any other renewal thereof, regardless of the manner in which the bond is terminated. It is clearly susceptible of this construction. The company wrote the bond and chose the language desired, and we must construe it most strongly against the insurer. Insurance companies cannot thus couch their contracts in doubtful language and allow their salesmen to employ the construction most favorable to the insured to catch the unwary, and then, when the company is hailed into court, claim the benefit of the construction most favorable to it. The purpose of the bond was to guarantee the fidelity and honesty of the tax collector, and to insure and indemnify the school district against loss by reason thereof, and was therefore an insurance contract and not one of suretyship and is not entitled to a strict construction in favor of the surety. Southern Surety Co. v. Austin (Tex. Com. App.) 17 S.W.(2d) 774, par. 2. We hold that, since the discovery was made within six months after the termination of the last renewal, it was within the time provided for in the contract.

At the time the bond was renewed in 1926, and at each renewal thereafter the chairman of the school board, as an inducement to the company to renew and extend the bond for another year, furnished the company with a statement that the books of Arrington for the previous year had been examined by the board and found correct and all money accounted for. The statement that all funds had been accounted for proved to be incorrect. The appellant contends that, since it relied on said representations in renewing the bond, the school district is now estopped to claim that there was in fact a shortage for the previous year. The evidence shows that the books of the collector had been audited annually by competent auditors and the shortage had not been found. There was therefore no fraud, but at most an honest mistake of facts. Pearson v. U. S. Fidelity & Guaranty Co., 138 Minn. 240, 164 N. W. 919. Moreover, the collector was required by law to execute the bond. The nature of the obligation to be assumed by the surety was prescribed by law. Revised Statutes, art. 2791. The school board was acting in its official capacity in requiring the bond, not for the protection of itself, but for the protection of the public interested in the school district. The chairman of the board of trustees could not change the obligation of the surety nor impair the rights of the public by any representations made by him. City of Hallettsville v. Long, 11 Tex. Civ. App. 180, 32 S. W. 567.

Furthermore, it does not appear that a copy of the certificate so made by the chairman of the school board was attached to or accompanied the bond. It therefore did not become a part of the contract between the parties and could not form the basis of a false representation to avoid the same. Revised Statutes, article 5049; National Surety Co. v. Murphy-Walker Co. (Tex. Civ. App.) 174 S. W. 997, par. 6; Southwestern Surety Ins. Co. v. Hico Oil Mill (Tex. Com. App.) 229 S. W. 479.

The appellant complains of the action of the court in permitting Noel Hollingsworth to identify the records of the bank of which he was cashier and to explain same and to read same in evidence and testify therefrom to deposits made in said bank to the credit of Arrington during the period covered by the bond. It also objected to like testimony of J. L. Hearne. The records referred to were not made by the witnesses, but were made and kept in the usual course of the business of the bank. We think the records of the bank made and kept in the usual course of its business showing large deposits to the credit of the personal account of Arrington were admissible as circumstances to show that Arrington actually received large sums of money for and on behalf of the plaintiff, for which he did not account. Since the witness was the custodian of such records, it was permissible for him to read same into the record and to explain the meaning thereof. Chapman v. Nieman (Tex. Civ. App.) 276 S. W. 302. Moreover, each item sued for by the plaintiff was amply supported by other testimony clearly admissible. The trial was before the court without a jury, and the presumption is that the court based its judgment upon the legal testimony and not upon illegal testimony. Hunnicutt v. Lee (Tex. Com. App.) 38 S.W.(2d) 572, 573, par. 3.

We have carefully considered all other assignments of error and find them without merit.

The judgment of the trial court is affirmed.

GALLAGHER, C. J., took no part in the consideration and disposition of this case.