## W. A. THOMAS COMPANY v. NATIONAL SURETY COMPANY.[1]

### May 29, 1919.

### No. 21,228.

**Insurance — against embezzlement of employee.**

1. Bonds to secure the fidelity of employees aré governed by the laws applicable to contracts of insurance.

**Same — misrepresentation of matters increasing the risk — intent immaterial.**

2. Misrepresentation by obligee of matters which increase the risk of loss, even if made without intent to deceive, avoids such a bond.

**Same — prior defalcation increases the risk.**

3. After having knowledge of a prior defalcation of its treasurer, plaintiff procured a bond from defendant securing it against such defalcations. In the application for the bond, plaintiff stated that the treasurer had always been faithful, and that plaintiff had no knowledge of any act or fact tending to indicate that he was unreliable, deceitful, dishonest or unworthy of confidence. *Held* that the matters misrepresented increased the risk of loss, and that the misrepresentation avoided the bond.

Action in the district court for Hennepin county to recover $10,000 upon defendant's fidelity bond. The answer alleged that the employer's statement, furnished by plaintiff to defendant when obtaining the bond was false and fraudulently represented to defendant that the employee

[1]Reported in 172 N. W. 697.

named Humlong was not indebted to plaintiff, except in the sum of $2,500, and set out in full the declaration and the conditions of the bond quoted in the fourth and fifth paragraphs of the opinion. The case was tried before Leary, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $9,677.80. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*Butler, Mitchell & Doherty,* for appellant.

*Kerr, Fowler, Schmitt & Furber,* for respondent.

TAYLOR, C.

On February 2, 1916, defendant executed to plaintiff a bond, whereby defendant obligated itself to make good any loss sustained by plaintiff by reason of any embezzlement committed after the first day of January, 1916, by Earl V. Humlong, plaintiff's treasurer. Plaintiff brought suit on the bond for sums embezzled by the treasurer between the first day of January and the fifteenth day of July, 1917, and recovered a verdict for the sum of $9,677.80. Defendant made a motion for judgment notwithstanding the verdict or for a new trial, and appealed from an order denying its motion.

Defendant contends that the bond was procured by fraudulent misrepresentations and never became of force or effect.

W. A. Thomas conducted a grain commission business in the city of Minneapolis for many years, and employed Humlong and W. B. Grosskopf in his office. Humlong had charge of the books and was manager of the office under Thomas, and Grosskopf was telegraph operator and also performed clerical and other services. In 1914 Thomas caused the plaintiff company to be incorporated and turned his business over to the corporation. He owned the greater part of the capital stock and became president of the company. The company issued stock of the par value of $2,000 to Humlong and Grosskopf respectively, taking their notes therefor secured by a pledge of the stock, and Humlong became secretary and treasurer of the Company, and Grosskopf vice president of it, but the business was conducted in the same manner as before, and as if it still remained the private business of Thomas.

The application for the surety bond was made in the name of plaintiff by Thomas as president, and among other things made the following declaration:

"The foregoing employee has been in the service of the undersigned employer one year and six months, and the duties required have always been performed in a faithful and satisfactory manner. The accounts were last audited on the first day of December 1915, and were correct in every particular. There has never come to the notice or knowledge of the employer any act, fact or information tending to indicate that employee is negligent, unreliable, deceitful, dishonest or unworthy of confidence. As far as the employer knows, employee's habits are good."

The application also stated that an indebtedness due plaintiff from Humlong was for the purchase of stock and amounted to about $2,500. Among other things the bond provides that the obligation of the surety is "subject to the following express conditions, which shall be conditions precedent to any recovery hereunder: 1st: That the employer shall not have had at the date hereof any knowledge of the employee having been guilty of any act of personal dishonesty, in any position in the employer's service, or in the service of any other person, firm or corporation, and all statements which the employer has furnished the surety, concerning the employee or his duties or accounts are warranted by the employer to be true, and if any of the statements be false or untrue, this obligation shall be null and void, and of no effect from the beginning."

It is conceded that in 1914, unknown to the other members of the company, Humlong began speculating in grain, using the funds and credit of the company therefor; that he entered these transactions on the books of the company as transactions executed by the company for a customer, whom he designated on the books as No. 103; that on July 31, 1915, he was in default to the company in the sum of $3,166.26 on account of these transactions; that he settled this shortage by repaying $1,400 to the company in cash and by giving the company his promissory note for the balance of $1,766.26, on which he arranged to apply $25 per month out of his salary; that Thomas was informed of these transactions by Humlong on July 31, 1915, and accepted the note on Humlong's promise to speculate no more; that, at the time of making the application for the surety bond in the following December, Humlong's indebtedness to the

company was the sum of $3,666.26, consisting of this note for $1,766.26 and of a note for $1,900 given for his stock; that, after settling for the above shortage, Humlong again began speculating in the same manner as before and on January 18, 1916, after the making of the application for the bond, but before the bond had been executed, refunded to the company the sum of $1,918 as the shortage resulting from these later transactions, that the transactions which resulted in the above mentioned shortages were of precisely the same kind and nature as those for which plaintiff seeks to recover in this action, and that none of them were disclosed to defendant.

While Thomas states that he did not know of the transactions which resulted in the shortage refunded on January 18, 1916, until long afterwards, nor of the cash refundment of $1,400 made by Humlong in July, 1915, and that he supposed that the note of $1,766.26 given July 31, 1915, represented the entire amount of Humlong's shortage on his prior transactions, and that such shortage did not exceed the amount of the commissions credited to the company on such transactions, he admits that he was informed of these transactions; that they were of identically the same nature as those involved in the present suit; that a reference to the books would have disclosed the cash refundment of $1,400; that he accepted the $1,766.26 note in settlement of the shortage, and that this note remained wholly unpaid at the time he made the application for the bond. He explains his failure to disclose these matters to defendant by saying that he did not have them in mind when he made out the application in December, 1915, and that he had no intent to mislead or deceive. But his own testimony puts beyond question the fact that he declared to defendant that "there has never come to the notice or knowledge of the employer any act, fact or information tending to indicate that employee is negligent, unreliable, deceitful, dishonest or unworthy of confidence," after he knew that Humlong had been guilty of missappropriating the company's funds, and that he answered defendant's inquiry as to how Humlong's indebtedness to the company arose by saying that it was for the purchase of stock after he knew that $1,766.26 of it arose out of such misappropriation of funds.

We concur in plaintiff's contention that the contract in question is governed by the laws applicable to contracts of insurance. Pearson v.

United States F. & G. Co. 138 Minn. 240, 164 N. W. 919; Quinn-Shepherdson Co. v. United States F. & G. Co. supra, page 428, 172 N. W. 693. Section 3300, G. S. 1913, provides:

"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increased the risk of loss."

Plaintiff admits the making of the misrepresentations, but claims that they were not made with intent to deceive or defraud and that the verdict decided this contention in its favor. Under the statute quoted, if the matter misrepresented increased the risk of loss, the misrepresentations avoided the contract, regardless of the intent with which they were made. Johnson v. National Life Ins. Co. 123 Minn. 453, 144 N. W. 218, Ann. Cas. 1915A, 458, and cases cited therein. With knowledge that Humlong was lacking in fidelity and honesty to such an extent that he had wrongfully converted plaintiff's funds to his own use in 1915, plaintiff applied for a bond insuring plaintiff against any embezzlement by him from and after the first day of January, 1916, and obtained such bond by representing that Humlong had always been faithful and that plaintiff had no knowledge of "any act, fact or information" tending to indicate that he was "unreliable, deceitful, dishonest or unworthy of confidence." To state it bluntly, plaintiff procured a bond insuring the future honesty and fidelity of an employee who had been a defaulter, by falsely representing that his character for honesty and fidelity was unblemished. This was a fraud on defendant. Capital Fire Ins. Co. v. Watson, 76 Minn. 387, 79 N. W. 601, 77 Am. St. 657. That the matters misrepresented increased the risk of loss is too plain to require argument, and a verdict to the contrary is wholly without evidence to support it. As the conclusion reached on this question disposes of the case, it is not necessary to consider the other questions raised by defendant.

The order is reversed and judgment will be entered for defendant.