CEYLON FARMERS ELEVATOR COMPANY v. FIDELITY & DEPOSIT COMPANY OF MARYLAND.[1]

May 22, 1925.

No. 24,467.

**Verdict sustained in action on fidelity bond of elevator manager—waiver of proof of loss within 90 days.**

Record examined and *held:*

(1) Evidence sufficient to justify the verdict.

(2) Evidence sufficient to justify the jury in finding that defendant waived the provisions of the policy requiring the furnishing of proof of loss within a 90-day period.

(3) The complaint stated a cause of action and was not deficient in alleging facts showing such waiver.

(4) The facts, stated in the opinion, presented a jury question as to whether there was a misrepresentation increasing the risk of loss.

(5) Admissions of the employe, under circumstances stated in the opinion, were evidence against the surety.

(6) Proof of loss is a preliminary notice and not a pleading and, when it is substantially correct as to the total shortage, the itemization of a wrong check as one of the items is not fatal.

(7) Inadvertent inaccurate statement by the court in charge to jury calls for prompt action by counsel.

[1]Reported in 203 N. W. 985.

(8)   The fact that a local newspaper published an article at time of trial concerning the case is not sufficient reason for new trial when the opposing party and his counsel are free from blame and no prejudice is shown.

1.  See Appeal and Error, 3 C. J. p. 843, § 751; p. 848, § 753; Evidence, 22 C. J. p. 389, § 462; Fidelity Insurance, 25 C. J. p. 1102, § 13; p. 1112, § 25; p. 115, §§ 29, 30; New Trial, 29 Cyc. p. 799.
2.  See Fidelity Insurance, 25 C. J. p. 1115, § 29.
3.  See Fidelity Insurance, 25 C. J. p. 1115, § 29.
4.  See Fidelity Insurance, 25 C. J. p. 1112, § 25.
5.  See Fidelity Insurance, 25 C. J. p. 1115, § 30.
6.  See Evidence, 22 C. J. p. 389, § 462.
7.  See Fidelity Insurance, 25 C. J. p. 1102, § 13.
8.  See Appeal and Error, 3 C. J. p. 843, § 751; p. 848, § 753.

Action in the district court for Martin county to recover upon a fidelity bond.  The case was tried before Dean, J., and a jury which returned a verdict in favor of plaintiff.  Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.  Affirmed.

*Daniel F. Foley*, for appellant.

*Haycraft & McCune*, for respondent.

WILSON, C. J.

Plaintiff employed one Shively as its manager.  Defendant became surety for his fidelity up to the sum of $4,000.  It is claimed that the manager's shortage under circumstances amounting to larceny exceeded this amount.  The jury found for plaintiff.  Defendant now appeals from an order denying its alternative motion for judgment or a new trial.

(1)   The defendant attacks the sufficiency of the evidence.  The plaintiff's business was that of a country elevator which sold grain at wholesale and which sold feed, flour and fuel to the local trade. A duplicate record of every local sale, other than coal, was made and carbon copies in book form were retained as office records; all coal sales were recorded in a separate book.  All local sales were recorded in still another book.  In depositing money in the bank

the manager made the usual deposit slips listing each item. He was required to make a list of moneys from local sales indicated on the deposit slips in the form of a receipt, procure the signature of the assistant cashier, and deliver to plaintiff's secretary. He made a similar statement signed by himself. which he delivered to plaintiff's treasurer. The two statements so furnished did not disclose the makers of the individual checks listed on the deposit slips which were retained by the bank. The record shows that an auditor made a complete examination of the books so as to check all sales, receipts, and deposits covering the period of time involved.

The method adopted by the manager, apparently for the purpose of perpetrating a fraud upon his employer, was carried out in different deposits and is illustrated by his deposit of March 25, 1922. On that date he submitted a statement to the assistant cashier and procured his signature, showing local sales and money deposited therefrom aggregating $886.60, but the deposit slip totaling the same amount included a check for $512 from Requa Brothers, a Commission firm of Chicago, which was not from local sales, and he thereby covered a shortage from local sales for that amount. On April 21, 1922, he covered an item in the same way for $560.23; on May 1, 1922 another item of $1,565.20; on May 17, 1922, another item of $1,265.20; aggregating $3,902.63 from wholesale shipments. In order to carry on this system he falsely reported to the plaintiff that Requa Brothers were delinquent in turning in account sales and remittances on shipments of grain on carload lots to them. On July 7, 1922, plaintiff's secretary told the manager that he would find out why the Chicago firm did not make more prompt remittances. Thereupon the manager said to the secretary:

"I want to speak to you a little bit on a kind of a private matter, something I would like to have you keep quiet. * * * I didn't want him (an employe) to know anything about this. I have lost a little money here for the company but I would like to have you keep that quiet as I think I can make it up. * * * I have been losing some on transactions and I would like to have you keep it quiet. * * * Well somewhere around $7,000 or $8,000. * * *

Well I have been carrying this burden so long now I can't sleep; I might just as well tell you, I have had the returns on those cars and have kept them down at my house;  *  *  *  You have got coming just what money you have got at the bank and whatever the balance of the returns is on those cars that are out."

The next day he met two of the directors and with his head hanging down, looking on the ground, he said: "Boys I am in bad; it is better than $16,000 shortage  *  *  *  I am in terrible trouble." He took from the office the account sales from Requa Brothers relative to grain sold at wholesale and particularly those accounts that related to the checks above mentioned as having been misapplied in deposit slips and retained them in his home so that the plaintiff would not discover his method of peculation. They were later surrendered.

The receipt made by the manager and signed by the assistant cashier, together with the other signed statement given to the treasurer listing the items of local sales under the circumstances is in the nature of an admission on the part of the manager of having received the money for which he has never accounted. These facts, together with other minor facts in the record, were sufficient to justify the jury in concluding that the manager was guilty of embezzlement.

(2) The policy provides for immediate notice, which was not given. It required the employer to file with the insurer an itemized claim within 90 days after becoming aware of defalcation. This the plaintiff did not do. It claims that the defendant waived this provision by reason of the following facts: The plaintiff procured the policy from a local banker who was the agent of the defendant. On July 8, 1922, plaintiff signed and sent a letter, prepared by defendant's local agent, to defendant, at its home office, advising that the insured was found short in his accounts in an amount estimated at between $14,000 and $15,000 and said: "He has been discharged and we will thank you to forward us the proper forms for presenting our claim as soon as possible, and oblige." On the same day the defendant's local agent wrote a letter to the defendant at its Min-

neapolis office giving them the same information. On July 13, 1922, the defendant answering plaintiff's letter included this statement: "We have referred the matter to our attorney, Mr. J. L. Sullivan, 1010 McKnight Building, Minneapolis, Minnesota, with the request that he give this matter his immediate attention." On July 27, 1922, the local agent wrote defendant's state agent that the plaintiff had been notified by defendant's home office that their attorney in Minneapolis had been notified to look after the case and also said: "This is all the elevator company has heard relative to the bond and they keep asking me, as the agent who procured the bond for them, when they can expect to hear from the bonding company." Two days later the state agent wrote the local agent in part saying this: "You are advised that the matter was referred by the home office to Mr. Sullivan, adjuster of this district, but he has been absent from the city. We are writing to the home office at Baltimore requesting that some action be taken and you will doubtless hear from the company in a short time." On August 7, 1922, Mr. Sullivan wrote the local agent advising the necessity of an itemized statement of the loss and added: "When you have prepared an itemized statement of claim then kindly have the inclosed form of affidavit of loss executed and send the papers on to us. When I get an opportunity to do so, I will go down to Ceylon and will call upon you when I am there."

The plaintiff's officers were in constant touch with the defendant's local agent and were familiar with the correspondence mentioned. The defendant had notice of the defalcation. It did not have the itemized statement. It was a natural thing for the plaintiff to ask defendant for necessary blanks with which to make such proof of loss and ordinary business courtesy required the defendant to furnish them or at least, if they did not intend to do so, to have answered and refused. The first letter asked for the blanks. Defendant did not refuse the request, but advised that the matter was placed in the hands of their attorney, with the request that he give it his immediate attention. This justified the inference or conclusion that Sullivan would consider the matter of sending the blanks. He eventually did so. He sent them to defendant's local agent, appar-

ently upon the supposition that he would prepare the statement. The state agent had written to the home office requesting that "action" be taken. This must have related to the matter of furnishing blanks and assisting in bringing about the furnishing of the proof of loss. The plaintiff was in constant touch with the local agent and it was consulting him because of the fact of his agency. The plaintiff was justified in believing that Mr. Sullivan would comply with the request that he give the matter prompt attention. In fact, the plaintiff then was justified in believing that thereafter Mr. Sullivan stood in the place of the defendant and, when he sent the blanks to the local agent, he advised that he would go to Ceylon. Doubtless the plaintiff believed that the defendant was acting in the matter. There was a delay of more than a month before the blanks were furnished by Sullivan, and then, when he suggested a trip to Ceylon, plaintiff might well have concluded that he was coming there in connection with its matter. It doubtless waited for his coming. He did not come. There was no reason for him to come. His statement was unnecessary. No reason appears in justification for his statement. When plaintiff saw Sullivan's letter to the local agent wherein he said: "When you have prepared an itemized statement" etc., it was justified in believing that the company through its local agent was going to fix this statement up and that it was relieved of that responsibility. The local agent did not turn over the blank form sent to him by Sullivan until October 9, 1922. The 90 days had gone by. The blank was then filled out by plaintiff on or about October 16, 1922, when it was mailed to the defendant and returned by it because the time had expired.

The court submitted to the jury the question as to whether or not upon this record the defendant waived this provision of its contract and the jury found that it did. The evidence is sufficient to justify this finding. Reilly v. Linden, 151 Minn. 1, 186 N. W. 121; Bienhoff v. N. Am. Accident Ins. Co. 153 Minn. 241, 190 N. W. 63.

(3) Defendant objected to the introduction of any testimony, on the ground that the complaint failed to state facts sufficient to constitute a cause of action and thereby attempted to raise the question of the alleged fatal omission to furnish the proof of loss within

90 days. Paragraphs 9 to 26 inclusive of the complaint set forth in detail many of the facts above stated, in support of plaintiff's claim of waiver on the part of the defendant. The pleading was sufficient and the objection was properly overruled.

(4) In connection with the renewal of the bond from time to time, plaintiff signed a paper certifying that, to the best of its knowledge and belief since the issuance of the bond, the manager had faithfully, honestly and punctually accounted for all money and property, etc. It is the contention of the appellant that this was a misrepresentation increasing the risk of loss. The evidence shows that, as a matter of fact, shortages occurred in the inventories almost every year. These were considered by plaintiff as shortages due to ordinary shrinkage, and there is nothing to justify the conclusion that the plaintiff at any time thought they were the result of any dishonesty on the part of the manager. This was true as to the loss in June, 1921, when the directors of plaintiff decided that the manager should make good half of such shortage. It was then thought that the manager was honest, and the best evidence of this is the fact that the plaintiff did not attempt to hold him for all of it, did not discharge him, and did not make any claim upon his surety. Whether there was a misrepresentation in this respect within the provision of section 3300, G. S. 1913, was a question of fact and was submitted to the jury for their determination. The facts of this case do not come within the rule of W. A. Thomas Co. v. National Surety Co. 142 Minn. 460, 172 N. W. 697.

The admissions of the manager under the circumstances stated above were admissible in evidence against his surety. Farmers Co-op. Exch. v. U. S. Fid. & G. Co. 150 Minn. 126, 184 N. W. 792.

(6) When the proof of loss was furnished, it included as the last item therein a check of Requa Brothers, dated June 13, 1922, for $350. It developed later that the manager had accounted for this item. Appellant claims the verdict should be reduced to that extent. This claim is without merit. The proof of loss is not a pleading. It is a preliminary notice required by the terms of the policy. It showed the shortage. The mere fact that one item was an error and that it was some other item that was the subject of the larceny

is of no consequence. The statement was substantially correct. The defendant was in no way prejudiced by the error. It was sufficient to warrant the suit for the correct amount.

(7) The charge of the court was as favorable to appellant as it could be, and is free from the many attacks now made by the assignments of error. In the recapitulation by the court there was a misstatement due to a verbal inaccuracy. The court said:

"On the other hand, if you find from all the evidence in this case that the agent Shively, during the time of his employment, and between June 1st, 1921, and July 8th, 1922, did not appropriate funds of plaintiff for which he would be liable to plaintiff under the terms of the bond in question, and if you further find that the defendant is relieved from requiring the proof of loss to be filed within the ninety day period, then your verdict should be for the defendant."

Obviously what the court intended to say in the last few lines was this: Or, if you further find that the defendant did not waive the filing of the proof of loss to be filed within the 90-day period, then your verdict should be for the defendant. This had been previously and accurately stated. This inadvertent misstatement could not have misled the jury. This was the kind of statement that called for immediate action from counsel, if he wished it corrected. This was not done. The question cannot be raised later. Dun. Dig. § 9798.

(8) The appellant seeks a new trial because, during the time when this case was tried, a local newspaper published an article concerning the trial of the case and made reference to the proficiency of Shively in making binding twine, indicating perhaps that the manager was at the time of trial of the case in penal servitude. The plaintiff and its counsel are exonerated from any connection with the publication. It was purely a newspaper item. We cannot presume prejudice from such publication. There is no showing that it had any effect upon the jury and an examination of the entire record would readily lead to the conclusion that the jury, in recognition of its duty, was lead to its conclusion exclusively by the evidence in the case. Appellant's contention in this respect is without merit.

There are a great many assignments of error in this case. We have gone through them carefully and do not find any others that require discussion.

Affirmed.