# HAYFIELD FARMERS ELEVATOR & MERCANTILE COMPANY v. NEW AMSTERDAM CASUALTY COMPANY.[1]

November 18, 1938.

No. 31,708.

[1]Reported in 282 N. W. 265.

*Fowler, Youngquist, Furber, Taney & Johnson* and *F. N. Furber,* for appellant.

*A. J. Rockne* and *Martin A. Nelson,* for respondent.

JULIUS J. OLSON, JUSTICE.

This was an action to recover damages for claimed breach of fidelity on the part of one Larson while employed by plaintiff, liability being founded upon a contract referred to in the record as a "blanket schedule bond," the material parts of which read:

"Know All Men By These Presents: That the NEW AMSTERDAM CASUALTY COMPANY (hereinafter called Surety), hereby agrees to pay unto the FARMERS NATIONAL GRAIN DEALERS ASSOCIATION, OMAHA, NEBRASKA, and its subsidiary or affiliated associations and incorporated companies, as their respective interests may appear (hereinafter called Employer), within ninety days after proof of loss as hereinafter set forth, the amount of any loss, in respect of any moneys, funds, securities or other personal property of the employer, or for which the Employer may be responsible, which any Employee named in the schedule hereto attached, or added thereto by acceptance notice as hereinafter provided, may while in any position in the continuous employ of the Employer, directly or by collusion with others, cause to the Employer, not exceeding, however, the sum set opposite the name of such Employee in said sched-

524

ule or in said acceptance notice, through any act or fraud, dishonesty, forgery, theft, larceny, embezzlement, misappropriation, wrongful abstraction or wilful misapplication, committed, if such Employee be named in said schedule, after noon of the 15th day of December, 1922, or if added thereto by acceptance notice, after noon of the effective date thereof, but before the Employer shall become aware of any default on the part of such Employee, and discovered before the expiration of two years from the termination of the employment of such Employee or the cancellation of this bond as to such Employee, whichever may first happen.

"Provided, However, And Upon The Following Express Conditions:

"First—That the Employer shall, within five days after the discovery of loss hereunder, notify the Surety thereof at its principal office in the city of Baltimore, Maryland, or its general agency at Omaha, Nebraska.

"Second—That claim for loss hereunder shall be itemized with full particulars, including the amount and date of each item, subscribed and sworn to by the Employer, and presented to the Surety within three months after the discovery of such loss.

"Third—That any suit or action to recover against the Surety on account of loss hereunder shall be brought before the expiration of twelve months from the discovery of such loss, or in case such limitation be void under the law of the place governing the construction thereof, then within the shortest period of limitation permitted by such law."

Plaintiff's connection with the bond is evidenced by an instrument which reads:

"Farmers National Grain Dealers Association

"Omaha, Nebraska

"No. 5386                                                     Feb. 18, 1925.

"Received of Hayfield Farmers Eleva. & Merc. Co. Hayfield, Minn. Twelve & 49/100 Dollars ($12.49) in payment of premium on Fidelity Bond in the sum of $5,000.00 on behalf of the above named Corporation and covering Fred O. Larson while in their employ as

Mgr. & Gr. Buyer at Hayfield, Minn. during the period beginning on the 15th day of February, 1925 and ending on the 15th of December, 1925.

"The above named has been added to and made a part of Fidelity Schedule Bond, No. 1000 held by said Farmers National Grain Dealers Association, at Omaha, Nebraska.

"Bond Entry Number 2576

"Amount of Bond—$5,000

"Premium Paid—$12.49

"Farmers National Grain Dealers Association

"[Signed]  J. W. Shorthill

"Sec'y-Treas."

The contract was continued in force by appropriate renewals until May 15, 1929. Larson had entered the employment of plaintiff as its manager and grain buyer in July, 1923, and continued in that capacity until August 1, 1928. Discrepancies and irregularities were discovered shortly after the term of his employment ceased, but the full extent thereof was not ascertained until a later date, much time elapsing before ascertainment of his shortcomings was definitely determined. At any rate, nothing happened until August 11, 1930, when a summons with complaint attached was served upon Larson in an action brought by plaintiff against said Larson, C. H. Finseth, Lars E. Tufty, Hans Gravedahl, and Nels H. Lee, as defendants. Only Larson and Finseth appeared in that case. Later, prior to January 29, 1932, that case was dismissed as to all defendants except Larson, and on that date the court appointed a referee "for the purpose of taking testimony and to report his findings of such testimony to this court." That order was made pursuant to stipulation between counsel for plaintiff and the only remaining defendant, Larson. The complaint in that action sought to impose liability against all the defendants upon the theory that they were the ones who "assumed and took charge of the business of the company as directors thereof." It was alleged that at the time Larson took charge of the property as manager the total assets, all of which apparently were what might well be termed

quick assets, amounted to $11,124.63; its liabilities at that time were only $1,000. Defendants were charged with having conspired to "defraud the plaintiff out of its property and assets," and for the purpose of concealing such wrongful acts on their part permitted records to be destroyed; that they failed to keep true and correct accounts in the company's books; that annual financial statements were issued under and pursuant to defendants' directions which falsely set forth the true financial situation of plaintiff; and "that said defendants have conspired together to wreck said plaintiff company and to use its assets either in grain gambling or for other purposes for their own personal ends." Damages were sought in the amount of $20,000.

The referee, after hearing had, made his findings and report to the court and found as facts that Larson had been employed by plaintiff from July, 1923, to August 1, 1928; that "during the time of his employment as manager for plaintiff corporation, the said defendant F. O. Larson converted to his own use" stored grain of the value of $5,459.45, also that "during the time of his employment" he had "collected from persons indebted to plaintiff on accounts incurred in their dealings with plaintiff, the sum of $366.10 and converted the same to his own use." There was no other finding as to the times when such conversions took place or the amounts thereof. Larson was bonded by defendant from February 15, 1925, to August 1, 1928, when his services were dispensed with. There is no finding as to amount of losses or conversions during the period covered by the bond.

Upon the report of the referee coming in the court adopted the findings so made and directed judgment against Larson for $5,825.55, with interest at six per cent per annum from August 1, 1928. Judgment pursuant thereto was entered against him October 3, 1932.

Defendant was not informed of these proceedings nor was it called upon to appear or defend the same. It disclaims any knowledge of the alleged misdeeds until the present case was brought. So far as the record discloses there is no evidence *contra*.

Liability in this case was sought to be imposed upon the theory that the Larson judgment was binding upon defendant, at least to the extent of furnishing *prima facie* proof of liability under its contract. Plaintiff freely concedes that it has not complied with any of the provisions referred to in the three subdivisions quoted under "express conditions."

The bond covered a large number of elevators situated within the region in which the Farmers National Grain Dealers Association of Omaha functions. The instrument was delivered to and remained in the hands of that corporation. Plaintiff never had physical possession of it, nor was a copy asked for or furnished plaintiff until long after the limitations provided under the mentioned subdivisions had expired. The present action was not commenced until May 11, 1933. Neither fraud nor mistake is pleaded or proved; nor is reformation sought. Plaintiff's rights must therefore rest upon the insurance contract.

The judgment here under review was entered December 27, 1937, for $5,825.55, the amount of plaintiff's judgment against Larson, plus interest as therein provided, from August 1, 1928, $1,824.19 and costs of suit $37.60, in all amounting to $7,687.34. Defendant's liability under its contract was limited to the penal sum of only $5,000.

Plaintiff, to avoid the consequences obviously flowing from the facts related, asserts that "the contract was never delivered and no attempt was ever made to give the respondent company a chance to know the terms and provisions of the contract of insurance for which they had been paying premiums many years." This claim is reiterated time and again in its brief. It also asserts that the Omaha company was defendant's agent by virtue of the receipts issued from time to time for premiums paid. There is also a suggestion of waiver, that being founded upon the assumption that the Omaha company was defendant's agent rather than plaintiff's. It is interesting to note, however, that in its complaint plaintiff states that the Omaha company "for certain purposes was the agent of the plaintiff and defendant companies in the transaction of certain business such as the writing of surety and indemnity bonds and

employers liability bonds and the like." It then alleges that "some time prior to the 18th day of February, 1925, the plaintiff company made application to the Farmers National Grain Dealers Association of Omaha, Nebraska, through the Farmers Elevator Association of Minnesota, to the New Amsterdam Casualty Company of Baltimore, Maryland, * * *. That pursuant to the application so made" defendant issued the contract here involved.

■ We shall assume, as contended by plaintiff, that this instrument is an insurance contract as defined in W. A. Thomas Co. v. National Surety Co. 142 Minn. 460, 172 N. W. 697. Likewise, that "fidelity bonds issued by compensated bonding companies are now regarded as policies of insurance, in substance, and are governed, for the most part at least, by the law of insurance rather than the law of suretyship." 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 9107b.

■ Insurance is defined by our statute "as any agreement whereby one party, for a consideration, undertakes to indemnify another to a specified amount against loss or damage from specified causes, or to do some act of value to the assured in case of such loss or damage." 3 Dunnell, Minn. Dig. (2 ed. & Supps.) § 4640, and cases under note 91. Such contract "is always personal." Id. and cases under note 92. Cetkowski v. Knutson, 163 Minn. 492, 204 N. W. 528, 40 A. L. R. 599.

■ The general law of contracts applies to contracts of insurance except as otherwise provided by statute. Id. § 4646a, and cases under note 39.

■ The person insured is charged with notice of his policy when he accepts it, and he is bound by its conditions, if he retains it without objection, unless he be misled by the insurer. Id. § 4658, and cases under note 78.

Plaintiff claims there was no delivery of the policy. A written instrument "does not become binding as a contract until the parties express an intention that it be so." Sawyer v. Mutual L. Ins. Co. 166 Minn. 207, 209, 207 N. W. 307, 308. What plaintiff means, we assume, is that the physical possession of the paper itself was never delivered to it. It is perfectly plain that the instrument was in fact delivered to and at all times remained in the possession of

the Omaha company. The receipt issued by it to plaintiff only shows the purpose to which plaintiff's money was applied. It purports to be, what it is in fact, an inter-company receipt. Clearly it is not any part of the schedule attached to the insurance contract. Plaintiff's only proof of its rights under the policy is this receipt. On its face is shown what was behind it, a "fidelity bond" on plaintiff's behalf; and that its employe, Larson, had "been added to and made a part of Fidelity Bond No. 1000 held by" the Omaha company. There is nothing in the case to show by proof or inference that the Omaha company was acting as an insurance agent. The obvious purpose of that company, in this matter at least, was to act for a number of its associates in the procurement of this kind of protection. Plaintiff made no effort to find out from the only source through which it was dealing what its contract rights were. It dillydallied from the fall of 1928, when Larson's defaults and misdeeds were first discovered, until August 11, 1930, before it commenced its proceedings against him. Not until October, 1932, was that case disposed of, and not until May 11, 1933, was defendant advised in any manner or form of the liability claimed in the instant case. So we have almost five years of unpardonable delay.

Plaintiff did nothing to ascertain the facts until more than a year after Larson had been relieved of his employment, when it wrote some letters to the Minnesota association. It is obvious that this organization was one for the mutual benefit of the companies entering into and forming part of that association. Nowhere is there the slightest indication that it was acting or could act for defendant.

■ It is obvious that the policy was "delivered" so as to be a valid obligation as to plaintiff and defendant. This being so, plaintiff was charged with notice of its contents as fully as if it had been physically delivered to it, and as such is bound by its conditions. As far as defendant knew, plaintiff's retention was wholly without objection. Its binding force was kept alive over a period of several years. Nowhere and by no one is there the slightest indication that plaintiff was misled by its insurer. Its failure to get the facts seasonably is its own fault or misfortune. Defendant

cannot be blamed. 3 Dunnell, Minn. Dig. (2 ed. & Supps.) § 4658, and cases under note 78.

■ Nor is there any proof of waiver, directly or by inference. A waiver is a voluntary act, and there must be an intent to waive a known right before it becomes of binding effect. While such intent may be expressed directly or inferred from conduct or declarations, we find nothing in the instant case to justify a finding that defendant has in any way or at any time waived any of its rights. *Id.* § 4679, and cases under note 85.

■ It is generally held that contracts stipulating a limited time within which an action may be brought thereon are valid unless unreasonable. This is true even though the period fixed is at variance with statutory limitations. Plaintiff has cited no case nor suggested any statute to the contrary. Numerous cases have been determined by this court and courts generally upholding the limitation upon which defendant here relies, *i. e.*, that suit must be brought within one year after discovery of the wrongful, fraudulent, or felonious act upon which liability is predicated. See 4 Dunnell, Minn. Dig. (2 ed.) § 5600, and cases cited under note 24.

Judgment reversed.

Mr. Chief Justice Gallagher took no part in the consideration or decision of this case.

