# CASES

DECIDED IN THE

# SUPREME COURT OF GEORGIA

AT THE

## MARCH TERM, 1902.

---

### BRUNSWICK GROCERY COMPANY v. LAMAR et al.

1. The acceptance and receipt of merchandise of a greater value than fifty dollars, under an oral contract of sale, which is contemplated by the Civil Code, § 2693, par. 7, as relieving the contract from the operation of the statute of frauds, must be such a transfer of the physical possession of the property as places the goods beyond the control of the vendor, and within the control of the vendee. Such a transfer is not accomplished where, under a contract of the nature indicated, the goods are left in the possession and control of the vendor, pending the taking of an inventory by him to determine the price to be paid for the goods.

2. Allegations in a petition which seeks to recover on such a contract, to the effect that in pursuance of the contract the plaintiff proceeded with the taking of an inventory, and that at the solicitation of the defendants the plaintiff made announcement to various persons of the transfer of the goods in question and sent to them orders to be filled for defendants in lieu of the plaintiff, are not sufficient to take the case out of the statute on the ground of a part performance of the contract by the plaintiff.

3. It is not permissible for a vendor, in selling goods as the agent of the vendee who has refused to accept them, to buy, without authority, additional goods for the purpose of inducing a sale of those on hand, and charge the vendee with a loss sustained on the whole.

Submitted May 1, — Decided July 23, 1902.

Action for breach of contract. Before Judge Hansell. Lowndes superior court. September 12, 1901.

*W. E. Kay* and *E. P. S. Denmark,* for plaintiff.
*W. I. Griffin,* for defendants.

LITTLE, J. This was an equitable petition brought by the Brunswick Grocery Company against J. J. Lamar and J. F. Lewis, who formerly did business as a partnership under the firm name of J. J.

Lamar & Co.   The petition was in substance as follows:   Prior to October 14, 1899, the defendants entered into negotiations with the plaintiff with a view to acquiring the stock of merchandise owned by the plaintiff in its wholesale grocery and tobacco business, it being contemplated that the plaintiff would retire from business and that the defendants would acquire its stock and the business built up by it.   An oral agreement was reached " on the basis that the said defendants acquired the  entire stock of merchandise" belonging to the plaintiff, including that in transit on October 14, 1899, " on the basis of invoice cost with freight thereon added, and the payment thereof was to be all cash, or, at the option of the defendants, one third in cash and the balance within twelve months, with interest, in which latter event the same was to be satisfactorily secured as petitioner might direct."   The purchase-price was to be determined by an inventory of the stock on hand.   In accordance with this agreement the plaintiff began taking stock, and the business was from that time conducted by the plaintiff for the benefit of the defendants.   The defendants made public announcement of their purchase of the plaintiff's business, and at the solicitation of the defendants the plaintiff made an announcement of the sale to a number of the most reliable houses with which it had been doing business, enclosing orders for shipment to the defendants in lieu of the plaintiff.   The defendants also published notices in the newspapers, of the acquisition by them of the  business of the plaintiff. While the delivery was in progress and the price to be paid was being determined, the defendants, without any reason, notified the plaintiff that they declined to carry out their contract, and requested a rescission of same, which plaintiff refused, electing to stand upon the trade as made with the defendants.   The plaintiff then proceeded as rapidly as possible, and to the best advantage of the defendants, to dispose of the stock of goods on hand which had been purchased by the defendants, the value of which, on October 14, 1899, with freight added, was $16,980.44.   In so disposing of these goods, it became necessary for the plaintiff to purchase other goods from time to time, so as to sell to the best advantage the goods not easily marketable, and to sell in the due course of trade on the usual time and credit to buyers, all of which was done with prudence and judgment by plaintiff, so that much less loss was entailed on the defendants than would have resulted if the plaintiff had sold

the stock of goods at forced sale immediately upon the announcement by the defendants of their refusal to consummate the trade. The money expended in purchasing goods for this purpose of aiding in selling off the stock amounted to $22,985.05, and the freight on all items purchased from and after October 14, 1899, to the date when shipment ceased, was $1,043.99, "making a total value of goods on hand on October 14, 1899, freight added, and those subsequently purchased, with freight added, of $41,009.48." From October 14, 1899, to August 1, 1900, when the liquidation of the sale of the stock was completed, for items of labor, rent, insurance, traveling expenses of salesmen, and miscellaneous items of expense, there was paid out $3,506.77. There was also paid out for salaries of officers and employees, other than set out in the last-named item, $3,045.00. The stock of goods on hand October 14, 1899, together with those subsequently purchased, was sold for $45,540.18, entailing a loss of $1,623.42 incurred from bad debts necessarily created in disposing of so large an amount of goods principally to a trade purchasing usually on credit, which is also justly due petitioner, together with interest on said sums, making due as principal $3,644.49 with interest; all of which defendants refuse to pay. The refusal of the defendants to carry out their agreement was in bad faith, and was done for the purpose of embarrassing plaintiff's business and credit, so that the defendants might acquire the stock of goods at a less figure than they would have to pay under the agreement made by them. Plaintiff also prays to recover attorney's fees, amounting to $600.00.

By amendment the plaintiff alleged that the defendants had also contracted with reference to purchasing the good will of the business; and added the following paragraph: "That the defendants, on or about the 13th, 14th, and 15th days of October, 1899, inspected, approved, and thereby accepted the property so sold to them by petitioner, and thereupon actually received the same, said property being left in your petitioner's possession as the bailee of the defendants." In another amendment it was alleged that the plaintiff " made a due and legal tender of the said goods purchased by said defendants and demanded payment for the same, and the said defendants refused to take the goods or to pay for them."

The defendants filed a demurrer on numerous special grounds, those that are pertinent to the present discussion being, that the

suit appears to be upon a contract in parol for the sale of more than fifty dollars' worth of goods, it not appearing that any note or memorandum in writing expressing the consideration was ever made; that it affirmatively appears that the plaintiff kept control of the goods and sold them to others, the petition containing no allegation that the defendants were insolvent or unable to pay the amount of the trade in full; and that no reason is shown why the plaintiff should have assumed guardianship over the stock of goods and conducted a mercantile business for the defendants for nearly a year. The trial court sustained the demurrer and dismissed the petition; to which judgment the plaintiff excepted.

1. Relatively to the statute of frauds, this case presents for determination two questions: First, do the allegations of the petition make a case of a complete sale, with an acceptance and receipt by the vendee of all or any part of the goods sold? Second, does the case fall within the purview of any one of the three paragraphs of section 2694 of the Civil Code, which enumerates the exceptions to the operation of the statute of frauds? Section 2693 of the Civil Code names, among the obligations which must be in writing to be binding on the promisor, "any contract for the sale of goods, wares and merchandise in existence, or not *in esse*, to the amount of fifty dollars or more, except the buyer shall accept part of the goods sold and actually receive the same, or give something in earnest to bind the bargain, or in part payment."

It is quite clear that the words, "except the buyer shall accept part of the goods sold and actually receive the same," necessitate an actual, rather than a constructive or implied delivery. It is true, as was in effect ruled in the case of *Daniel* v. *Hannah,* 106 *Ga.* 91 (3), that this delivery need not be into the physical custody or possession of the buyer, but may be made to his agent, or at a place designated by him. But there must be no doubt that the delivery, in whatever form it be made, is such a one as will place the goods entirely beyond the control of the vendor and completely within the control of the vendee. Accordingly, it has been held that delivery by the vendor to a carrier, for shipment to the vendee (the goods being lost or destroyed in transit) is not such an acceptance and receipt by the vendee as will prevent the operation of the statute. *Lloyd* v. *Wight,* 20 *Ga.* 574. In the same case, reported in 25 *Ga.* 216, the rule is laid down in the following lan-

guage : "There is no actual acceptance, to satisfy the act, so long as the buyer continues to have the right to object to the quantum or quality of the goods." Tested by this rule, it is evident that there was in the present case no acceptance and receipt sufficient to satisfy the statute, for the plaintiff had not completed the inventory, which was a condition precedent to fixing the price to be paid for the goods; and in the light of all the authorities, it seems to us quite clear that the petition does not make out such a case of acceptance and actual receipt of the goods on the part of the defendants as to take the case out of the statute of frauds. True, the petition alleges sale and acceptance, but it contains other matter which directly negatives these allegations. It appears that no definite agreement had been reached as to the price to be paid for the stock of goods, this very important detail having been deferred pending the inventory, which, it is to be noted, was taken by the plaintiff. While it is alleged that from the time the plaintiff began taking stock the business was conducted by the plaintiff for the benefit of the defendants, it is not alleged that this course was in pursuance of any agreement, oral or otherwise, between the parties, or that the defendants consented to it or were cognizant of it. If there were any doubt as to whether the petition makes out a case of acceptance and receipt by the defendants such as is contemplated by the statute, it would be put at rest by the plaintiff's amendment which declares that " petitioner made a due and legal tender of the said goods purchased by said defendants and demanded payment for the same, and the said defendants refused to take the goods or to pay for them." This language, of course, must be construed most strongly against the pleader, and it goes without the saying that there could have been no tender and no refusal to accept if, as is contended, the goods had already been accepted by the defendants and were under their actual control.

2. Section 2694 of the Civil Code, as before stated, enumerates the cases to which the preceding section, embodying the provisions of the statute of frauds, shall not apply. They are : (1) when the contract has been fully executed; (2) when there has been performance on one side accepted by the other in accordance with the contract; and (3) where there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance. The facts set out in the peti-

tion do not, we think, bring the case made within any one of these three classes; certainly not in the first, and we think not fairly or properly in either of the other two. What, according to the allegations of the petition, was done by the plaintiff, in the way of a performance of the contract? Three things are alleged, viz., the taking of an inventory to determine the price to be paid for the goods, the sending out of notices of the transfer of the business, and the ordering of additional goods upon the credit of the defendants. It does not appear from the record that any of these acts, except the taking of the inventory, was required by the verbal contract made between the parties, and upon which this suit is founded. The announcement by the plaintiff, to the houses, with which it had been dealing, of the transfer of the business is alleged to have been merely at the solicitation of the defendants, and not in pursuance of the contract of purchase; while no authority is shown for the ordering of additional goods to be charged to the defendants. The contract declared on was one simply of bargain and sale, and anything done outside of the plain limits of such a contract must, in order to charge the defendants, have entered in some way into the consideration of the agreement between the parties. Certainly it will not be contended that the taking of an inventory for the purpose of ascertaining the price to be paid, accompanied, so far as appears from the record, by no expense whatever, is such a part performance of the contract of sale as to render it a fraud of the defendants to refuse to comply with their agreement. Mr. Browne, in his work on the Statute of Frauds, § 448, says: " It is obvious that the *mere* circumstance that a verbal agreement has been in part performed can afford no reason, such as to control the action of any court, whether of law or equity, for holding the parties bound to perform what remains executory. The doctrine of equity in such cases is, that where an agreement has been so far executed by one party, with the tacit encouragement of the other, relying upon his fulfilment of it, that for the latter to repudiate and shelter himself under the provision of the statute would amount to a fraud upon the former, that fraud will be defeated by compelling him to carry out the agreement."

It is further to be observed that the announcement by the plaintiff of the transfer of the business to the defendants and the ordering by it of goods for the defendants, not being required by the con-

tract of sale upon which the plaintiff is seeking to recover, can not constitute part performance of that contract so as to take it out of the statute.   In the case of *Graham* v. *Theis*, 47 *Ga.* 479 (2), this court ruled that the part performance provided by the statute as making an exception "must be a part performance of the contract, and the doing by either party of some independent act, not a part of the contract, does not become a part performance, because the doer of the act was led so to act by his belief that the parol contract would be performed by the other party."   It is argued, however, by counsel for the plaintiff, that the question whether these acts constituted a part performance of the contract was one which should have been submitted to the jury; and in support of this contention the cases of *Bryan* v. *R. Co.*, 37 *Ga.* 26, and *Burnett* v. *Blackmar*, 43 *Ga.* 569, are cited.   An examination of these cases shows that they do not sustain the position taken by the plaintiff; for in each of them it appears that the petition filed by the plaintiff alleged acts which, indisputably and as matter of law, constituted part performance of the contract sued on, and which, if proved, would necessarily have prevented the operation of the statute.   In the *Bryan* case, supra, so confidently relied upon by counsel, there was no demurrer to the petition.   A judgment of nonsuit was rendered, which was reversed by this court on the ground that evidence had been introduced by the plaintiff tending to establish the part performance of the contract set up in his petition, and that this evidence should have gone to the jury for their consideration. The case at bar is quite different; for here the facts alleged in the petition do not as a matter of law, if proved, constitute a part performance of the contract declared on.

3. Independently of what has been here laid down, there can be no doubt that the plaintiff has failed to make a case for recovery, under the Civil Code, § 3551, of the difference between the contract price of the goods and the price realized upon the sale of the stock by the plaintiff.   There is no authority or precedent in law for the course pursued by the plaintiff, after the alleged violation by the defendants of their contract, in continuing to conduct the business for nearly a year, buying new goods, opening additional accounts (many of which were admitted to have been bad), and keeping traveling salesmen on the road for the purpose of selling the goods.

*Judgment affirmed.     All the Justices concurring, except Lewis, J., absent.*