## NATIONAL FINANCE CORPORATION *v.* EICHOLZ.

1. In this case the attorneys were employed only for the purpose of determining whether title was merchantable. An attorney at law, employed merely for the purpose of examining and passing upon the merchantability of title to land bought by a purchaser under a sales agreement which also fixes a date on which merchantable title is to be tendered by the vendor, is not authorized in behalf of the purchaser to waive the stipulation of the contract which provides that merchantable title shall be tendered on or before December 26th, 1925.

2. While ordinarily time is not of the essence of the contract, where, as in the present case, there was a provision in the contract by which the sum of $1000 was forfeited unless the purchaser complied with his purchase according to its terms within sixty days, and there is testimony that at the time of entering into the contract there was a "boom" in suburban acreage property which was the nature of the subject of the sale in this case, time was of the essence of the contract.

3. The jury was authorized to find that all negotiations between the parties subsequent to December 26, 1925, were had with a view to the creation of a new agreement which was so substantial a modification of the original contract as to create a new agreement; but this agreement is unenforceable because in violation of the statute of frauds, which requires all contracts as to the sale of land to be in writing. "A contract which must, under the statute of frauds, be in writing, and which accordingly is put in writing and duly executed, can not be subsequently modified by a parol agreement." *Augusta Southern R. Co.* v. *Smith*, 106 *Ga.* 864 (33 S. E. 28).

4. In view of the rulings in the first and second headnotes and disregarding the evidence which under such rulings should have been excluded, the legal evidence demanded the verdict, and other alleged errors of law become immaterial.

5 The court did not err in overruling the motion for a new trial.

No. 6037. FEBRUARY 28, 1928. REHEARING DENIED MARCH 3, 1928.

Action for specific performance. Before Judge Meldrim. Chatham superior court. April 29, 1927.

*Anderson, Cann & Cann, Bouhan & Atkinson,* and *M. L. Cherkas,* for plaintiff.

*Lawrence & Abrahams,* for defendant.

RUSSELL, C. J. In its petition the plaintiff alleged that on October 31, 1925, it entered into a contract for sale of described property for the sum of $37,450, payable $15,350 in cash and the balance in three equal installments bearing interest at six per cent.

Appeal and Error, 4 C. J. p. 1167, n. 94.
Attorney and Client, 6 C. J. p. 657, n. 94.
Frauds, Statute of, 27 C. J. p. 192, n. 72; p. 327, n. 47.
New Trial, 29 Cyc. p. 832, n. 60.
Vendor and Purchaser, 39 Cyc. p. 1339, n. 59, 62, 64.

per annum, the sale to be completed within sixty days from October 26, 1925; and that petitioner, "at all times" since the date of entering into the contract, has been ready, able, and willing to carry out the obligations imposed upon it, and has at all times since said date specifically offered to perform the same. It alleged breach of the contract on the part of the defendant by a refusal to comply with the terms within the time limit. The sales ticket, which is the basis of the suit, provided that the title was to be merchantable and warranted by a warranty deed, and "deferred payments to be secured by deed to secure debt. The sale to be consummated within sixty days from October 26, 1925, and settlement to be made through the office of T. A. Waters, seller agreeing to pay 5% as commissions. . . If the sale be not consummated by the purchaser within —— days from this date, the owner may, at his option, declare the sale void immediately thereafter, and the money paid on account of the purchase-price is to be applied to the agent's commission, the balance, if any, to be paid to the owner. If, within —— days the title is found to be not merchantable, and the owner or agent so notified, the money paid on account is to be returned to the purchaser." The petition therefore, construed in the light of the sales contract, provided for a definite expiry on December 26, 1925; and the theory of the pleader, as set forth in the petition, was that at all times preceding that date the plaintiff had a good merchantable title to the land in question, which it was ready, able, and willing to convey upon the terms stipulated in the sales ticket.

The defendant answered, that the agreement never became binding, because of the breach of its terms by the plaintiff; that under the terms of the sales ticket time was of the essence of the contract; that at the time the sales agreement was entered into between the parties the real-estate market in Savannah was very active and many sales and resales were being made at increasing prices; that the necessity for a merchantable title, readily transferable, was in such matters essential, and the plaintiff well knew the same and contracted with knowledge in reference thereto; that the plaintiff did not, at the time the contract was entered into with the defendant, have paper or other title to the real estate intended to be conveyed, nor did it have merchantable title then, or at any time prior to or including sixty days from October 26,

1925; that the plaintiff could not convey to the defendant merchantable title within the terms of its agreement and within the time contracted, and by reason thereof breached its agreement with defendant; that plaintiff had neither paper title nor merchantable title to the property, and never tendered nor could it tender the same within the terms of. the contract; that at the time she contracted for the purchase of the property the plaintiff represented to her that the standing timber growing on the land, and certain timber theretofore cut but not removed therefrom, was a part of and intended to be included in the purchase of the real estate by the defendant; that prior to October 26, 1925, and for sometime subsequent thereto, and within the sixty days, timber on this tract of land was cut and carried away, and that which had theretofore been cut was removed, contrary to the terms of the agreement, which removal constituted a breach of the contract; that at no time within sixty days from October 26, 1925, was the plaintiff ever in possession of the land, nor could it tender possession, for the reason that adverse claimants of such possession were in actual occupancy of the land, engaged in cutting and removing timber therefrom; that the plaintiff never acquired title to the property until long after the expiry of the time limit set by the terms of the contract for the passing of title, and could not make paper or merchantable title to the real estate within the terms of the contract; that the plaintiff had never at any time tendered a deed to the property within the terms and conditions and under the agreement contained in the contract of sale; and that upon failure of the plaintiff to render a merchantable title she had notified it and made demand for the return of the earnest money deposited of $1000, with interest; for which amount she prayed judgment. The plaintiff did not demur to this answer. There is no suggestion in the pleadings of any equitable apportionment of the purchase-price by reason of any change in the status of the land, or by reason of the removal of the timber therefrom, or because of inability of the plaintiff to carry out and perform the full terms of its agreement; and no equitable relief is sought except specific performance of the entire contract.

The evidence disclosed that the plaintiffs were speculating in real estate in and around Savannah at a time in 1925 when the real-estate boom in Florida was drawing to a close. M. L. Cherkas

and Barney Marcus, with their associates comprising the National Finance Corporation, undertook to purchase and immediately re-sell a sales agreement covering the tract of land in question, without putting up the money to handle the transaction. The land was a portion of the original holdings of the Georgia-Carolina Lumber Company, which had been sold by that corporation under a bond or agreement for title to F. M. Eslick, dated March 26, 1924, the consideration being $11,000. On August 28, 1925, Eslick gave an option agreement to W. L. Merriman as agent for himself, Charles F. Fulton, and others, for the purchase of this property for the sum of $15,000, with the stipulation that "all growing crops on the said land at the time of such sale are to be reserved by me, and I am to be allowed a reasonable time in which to remove them." This sales option was accepted on October 17, 1925, and an executory sales agreement of that date was entered into, whereby $8000 was to be paid in cash and the balance of $7000 was to be secured by a deed to secure debt.

The National Finance Corporation and Mrs. Rose Eicholz entered into what is styled an "Official Sales Ticket, Savannah Real Estate Board," as follows: "State of Georgia, Chatham County. We have this day sold to Rose Eicholz for the consideration of $37,450 for the account of National Finance Corporation, Agents, all that certain lot of land situated in Chatham County, being a portion of the Lloyd tract lying between the 9 and 10 mile-post on Ogeechee road, and bounded as per attached sheet. . . The title to the same to be merchantable, and warranted by warranty deed. Terms: $15,350 cash, balance in three years of equal installments at 6% interest on deferred payments. Deferred payments to be secured by deed to secure debt. The sale to be consummated within sixty days from October 26, 1925, and settlement to be made through the office of T. A. Waters, seller agreeing to pay 5% as commission. Taxes, rents, and water-rent to be prorated to date of settlement; insurance now on property to be prorated at the value of the policies, and is a part of the terms of the sale. If the sale be not consummated by the purchaser within——days from this date, the owner may, at his option, declare the sale void immediately thereafter, and the money paid on account of the purchase-price is to be applied to the agent's commission, the balance, if any, to be paid the owner. If within——days the title is found

to be not merchantable, and the owner or agent so notified, the money paid on account is to be returned to the purchaser. If the title is rejected by the purchaser's attorney because of any undisclosed encumbrances or executions against the owner, which the seller was aware of at the time of signing sale ticket, the commission of the broker shall be paid to him by the seller notwithstanding. The broker's commission shall not be defeated in the event of the buyer and seller mutually agreeing to call off the sale. Received on account of purchase-price $1000. Executed in triplicate this 31st day of October, 1925. Approved: National Finance Corporation, Agents. B. Marcus, Pres. (L. S.), Owner. National Finance Corporation, Agents, by B. Marcus, Pres. Attest: S. Robinson, Sec. Sales Agent. T. S. Waters. I agree to and accept the above terms of sale. Rose Eicholz (L. S.), Purchaser."

This action had its origin in the fact that Mrs. Eicholz refused to take the property. The National Finance Corporation brought this suit to collect the purchase-price of the land mentioned in the contract. Upon the trial of the case the jury found in favor of the defendant. The plaintiff filed a motion for a new trial upon various grounds, which was overruled by the trial judge, and exception is taken to that judgment. It is to be noted that the contract provides that the sale is to be consummated "60 days from October 26, 1925." As stated in the brief of counsel for the plaintiff, "at this time plaintiff did not itself have a deed to this property, but had a similar contract of purchase and sale from C. F. Fulton et al., dated October 26, 1925; and Fulton et al. had a similar contract of purchase and sale, dated October 7, 1925, from F. M. Eslick. Eslick held the property under a bond for title from Georgia-Carolina Lumber Company. Plaintiff, realizing that it would require an attorney to approve its title and prepare its title papers, and knowing that E. H. Abrahams, a competent attorney of Savannah, would examine the title and prepare the transfer papers to its vendee, Mrs. Eicholz, undertook to engage Mr. Abrahams' services for this work. After conferring with Mrs. Eicholz, Mr. Abrahams undertook the legal service for both plaintiff and defendant, with the consent of both parties. On December 23, Mr. Abrahams advised the plaintiff that he could not further represent plaintiff, because it appeared its interest might conflict with that of Mrs. Eicholz, stating that there were certain

objections to the title, about which·he was writing Mrs. Eicholz and would send plaintiff a copy of same. On December 30, 1925, a letter was written by Mr. Abrahams to Mrs. Eicholz, and a copy sent to the National Finance Corporation, setting out certain difficulties he was having in investigating the title. In the meantime, on December 24, 1926, the plaintiff employed other attorneys to investigate and correct any irregularities in the title. On January 11, 1926, the plaintiff company wrote defendant they had taken title and were prepared to convey the property by warranty deed and establish the title as good and merchantable. On January 13, 1926, attorney for plaintiff company wrote Mr. Abrahams and Mrs. Eicholz, explaining why the Munnerlyn marriage settlement, mentioned in Mr. Abrahams' letter of December 30, 1925, did not affect the title to the property. On January 14, 1926, Mr. Abrahams, replying to the above letters of January 11 and January 13, advised that Mrs. Eicholz would not take the property, demanded the return of the $1000 earnest money, and gave the reasons for Mrs. Eicholz's refusal to accept the property."

The reasons given in the letter of Mrs. Eicholz's attorney are: "1st. Our client advised us that certain representations were made at the time that the sales agreement was entered into, inducing her to sign the same, as to the extent of the timber on the property, it being represented that the standing timber on the tract, as also certain timber cut but not removed, were a part and were intended to be included in the purchase by her. We are advised that, pending the negotiations for the closing of title, certain of the standing timber has been cut and taken away, and also certain of the timber which had been cut has also been taken away. She has the names of the parties who removed the same. 2nd. It appears that your company, under its contract of sale, agreed to convey a merchantable title by warranty deed within 60 days from October 26, 1925. On that date the National Finance Corporation, Agents, neither had paper title to the property nor was it in possession of the same. There is a party now on the land who claims a right to cut timber, and states that he proposes to do so and to continue to burn charcoal on this property. The title was not merchantable. 3rd. In the examination of the title, a copy of our preliminary search was furnished you as a courtesy, and we mentioned in that search that the deed from Henry Schaf-

fer was intended to be signed by the heirs of the estate of George W. Owens. Among the heirs of George W. Owens was his daughter, Mrs. Lizzie Munnerlyn, née Owens. The deed referred to contains a reference to a marriage settlement executed between Mrs. Munnerlyn and her husband, since deceased. Our examination of the records of Chatham County fails to disclose a copy of such a marriage settlement, or of the trust created thereby, or the date thereof. 4th. In addition to the foregoing, there appears of record an unsatisfied execution against one of the former owners of the property, not barred by the statute of limitations." In reply, as plaintiff's brief states: "On January 15, Mr. Cherkas, attorney for plaintiff, wrote Mr. Abrahams he had located the Munnerlyn marriage settlement, and had that day recorded it. Deeds closing the sales agreements first above referred to were executed, and all filed for record on or before January 11, 1926, so as to vest the property in plaintiff. The execution referred to in the 4th paragraph of Mr. Abrahams' letter was taken care of by the deposit of $500 in the Citizens Trust Company, until the execution could be canceled. The execution was canceled January 18, 1926. As to the timber claimed to have been cut and removed after the signing of the sales agreement, the plaintiff company agreed with Mrs. Eicholz to allow her $1000 to cover this objection and to avoid a lawsuit." It is to be borne in mind that the sales agreement was to be closed "60 days from October 26, 1925," which both parties concede would have expired on December 26, 1925.

Pretermitting a discussion of various questions raised in the record, it seems to us that the real question which must control the decision in this case is whether Mrs. Eicholz so waived the time limit of sixty days as to have granted the National Finance Corporation the right to comply with its agreement to tender her merchantable title beyond the sixty-day limit, at least until January 18, 1926, because it is conceded by counsel for the plaintiff that the execution which stood upon the record as a lien upon the property was not canceled until that day. It is insisted by counsel for the plaintiff that the National Finance Corporation was not notified by counsel for Mrs. Eicholz that he could no longer represent it until December 24, 1925. Conceding, for the sake of argument, that this gave the plaintiff a very limited time in

which to complete an abstract, was Mrs. Eicholz in anywise to blame therefor? It seems that Mr. Abrahams was her regular counsel, but it does not appear that she had anything to do with the employment of her counsel by the National Finance Corporation, other than that she consented that he might also represent the corporation, a service performed by able counsel as a mere courtesy without fee, and a perfectly proper act, but one in which Mrs. Eicholz had no sort of participation and by which she is not bound. A sense of propriety actuated Mr. Abrahams in calling the attention of the corporation to the fact that he could no longer represent it, as soon as he discovered that there might be a possibility of conflict. It is perfectly clear from the record that there was no design on the part of Mr. Abrahams to delay the National Finance Corporation with the purpose of affording Mrs. Eicholz a means of relieving herself from the contract. That a conflict of interest might arise might well have been anticipated by the corporation at the time they solicited and accepted the gratuitous service of Mr. Abrahams, and it might have been assumed that in that event an ethical lawyer would have disconnected himself from one or the other of the parties. So we come to the question which we think is controlling, whether Mrs. Eicholz in declining to carry out the sales contract is bound by anything in the record in this case except her own acts and declarations? It is strenuously insisted by very able counsel for the plaintiff that the grounds of objection to the title thereafter tendered, specified in the letter of counsel of January 14, 1926, can not be added to or enlarged as matter of defense by other objections. We fully recognize the principle stated, which forbids a party from "mending his hold" in such an instance. However, there is nothing in the record indicating or even suggesting that Mr. Abrahams was in any sense the agent of the defendant in any capacity other than with respect to the validity of the title to be evidenced by the deeds to be tendered her, as he might ascertain it to be from the records.

It appears from the record that Mr. Abrahams had nothing to do with the making of the contract as to the sale of the land involved in this case. So far as appears, he did not know that Mrs. Eicholz had bought the property in question until he was employed to examine the title. He certainly had no part in fixing the terms of the sale, and was in no way obligated in the per-

formance of the contract. It does not appear that he was authorized, expressly or impliedly, to grant an extension of the time within which the title should be perfected. There is a vast difference between employing an attorney to examine records and ascertain the state of title with respect to real estate, and the creation of a general agency to purchase the same tract of land so as to embody and include the terms of the purchase. The contract in this case was in writing. To have extended the time fixed for the completion of the contract, or "closing of the trade" as it is denominated by the witnesses, would have involved the change of a very important term of the written contract, and perhaps would have necessitated that the agreement to extend should itself be in writing (though it is not necessary for that purpose). At all events, it is perfectly plain from the record in this case that the plaintiff can not rely upon any act on the part of Mr. Abrahams, employed merely as an attorney to pass upon the validity of the deeds to be tendered his client, for the purpose of establishing an agreement which required the trade to be closed on December 26, so as to extend the time for closing to January 18, 1926. This being so, there appears no evidence other than that Mrs. Eicholz, on December 15, 1925, informed the president of the National Finance Corporation that she would not perform the contract—that she would not take the land. After this declaration on her part, all else that occurred was nugatory because unnecessary. If the National Finance Corporation, knowing that their title was merchantable, intended to insist upon the contract, it was its duty, on or before December 26, 1925, to have tendered evidence of merchantable title in compliance with its contract, or it perhaps need not have actually tendered its deeds (a refusal to accept its deeds having dispensed with the necessity of tender, because the law does not require the doing of a vain thing), but to enforce the contract and recover in the case at bar it would be obliged to show that on December 26, 1925, it actually had merchantable title. The evidence fails to show this fact. On December 26, 1925, there was an unsatisfied fi. fa. amounting to some $500 against Eslick, who was in possession of the premises, which was not satisfied until January 11, 1926. The National Finance Corporation had neither title nor possession of the premises. We do not lose sight of the fact that the contract was en-

forceable although the vendor did not have title prior to the closing day. It did not matter that it held three sales tickets in the line of purchase in this case, none of which had been complied with, and that Eslick held only a bond for title from the Georgia-Carolina Lumber Company, with several thousand dollars of the purchase-price unpaid, and there was not on record any evidence that the Lumber Company had title, it holding under an unrecorded deed. A party may have merchantable title in these circumstances, but it is not transferable merchantable title until the obstacles to undisturbed possession and the ability to dispose of the purchase by sale are removed. All of the evidence as to negotiations subsequent to December 26 tends to show a new agreement based upon a reduction in price, by an agreement to pay Mrs. Eicholz $1,000 for the timber which she claimed had been removed or cut from the premises, and an extension of time of payment of the unpaid purchase-price from three years to five years. The suit is not based upon this subsequent agreement, even if it could be so predicated in view of the requirement that all contracts as to the sale of land must be in writing. Inasmuch as the uncontradicted testimony of Mrs. Eicholz, corroborated by that of Mr. B. Marcus, the president of the National Finance Corporation, to the effect that on December 15 (according to Marcus Dec. 19), 1925, Mrs. Eicholz stated positively she would not take the land, we are of the opinion that the verdict returned by the jury was demanded by the evidence. In this state of the case the errors assigned in the various grounds of the motion for new trial are immaterial. The labor and expense of issuing and publishing an exposition of some of the abstract principles of law, even if interesting, has been obviated by previous ruling of this court.

> *Judgment affirmed. All the Justices concur, except*
Hines, J., who dissents.