NOWELL, administratrix, *et al. v.* MAYOR AND COUNCIL OF MONROE; *et vice versa.*

No. 9318.   SEPTEMBER 14, 1933.   ADHERED TO, SEPTEMBER 26, 1933.

*H. C. Cox, Little, Powell, Reid & Goldstein, James K. Rankin,* and *James H. Therrell,* for plaintiffs in error.

*C. N. Davie, J. F. Kemp, L. S. Camp,* and *A. M. Kelly,* contra.

BELL, J. The certified questions, when considered with the name and style of the case, indicate that the litigation concerns a default of a clerk and treasurer of the City of Monroe; and hence the questions should be answered in the light of any pertinent provision of the charter of that municipality. While in other questions will be found the terms, "insurer," "fidelity company," and "fidelity insurance," the first question states that a fidelity company "bonded a city clerk" in the sum of $2000 for the year 1920 in consideration of a premium of $10, the bond not providing for any renewal thereof. The charter of the City of Monroe declares that "the mayor and council may provide for taking bond and security from" the clerk and treasurer. Ga. L. 1896, p. 212, § 15. The act of bonding the city clerk presumably comprehended the execution and delivery of a bond signed by the officer as prin-

cipal and by the fidelity company as surety. The Civil Code (1910), § 4 (7) provides that "When a bond is required by law, an undertaking in writing, without seal, is sufficient; and in all bonds where the names of the obligors do not appear in the bond, but are subscribed thereto, they are bound thereby." See also 9 C. J. 7. It follows that when the fidelity company "bonded the city clerk," it became bound by a contract which was not only an instrument in writing but was one required by law to be in writing and to be signed by the obligors. This is not to say, however, that a "bond" not signed by the city clerk as principal might not yet be valid against the fidelity company as an obligation of some character. *Mayor &c. of Brunswick* v. *Harvey,* 114 *Ga.* 733 (40 S. E. 754); 9 C. J. 13; 50 C. J. 30. The bond given for the year 1920, not providing for any renewal thereof, could not be so extended as to answer for a new term by a mere parol agreement. A contract which the law requires to be in writing, and which is accordingly put in writing and duly executed, can not be altered or modified by a parol agreement made subsequently to its execution. A new agreement would be required in order to effectuate a renewal of the original bond, and such new agreement would be inadequate for that purpose unless it, like the bond, was in writing and signed by the fidelity company. *Augusta Southern R. Co.* v. *Smith,* 106 *Ga.* 864, supra; *National Finance Corp.* v. *Eicholz,* 165 *Ga.* 799 (3) (142 S. E. 134). In some jurisdictions it is held that a contract required to be in writing may as to the mere time for performance be modified by a subsequent oral agreement, but such is not the rule in this State. *Hawkins* v. *Studdard,* 132 *Ga.* 265 (5, 6) (63 S. E. 852, 131 Am. St. R. 190); *Jarman* v. *Westbrook,* 134 *Ga.* 19 (67 S. E. 403). See, in this connection, John Bonicamp Co. *v.* Starbuck, 25 Okla. 483 (106 Pac. 839, L. R. A. 1917B, 171, note).

The facts that the agent of the fidelity company mailed to the city clerk a bill for $10, and that this bill specified the number of the original bond, its amount, the amount of the premium due for the new year, and had at the bottom the words "Read your policy," and that the premium was thereafter remitted to the company and the bill was marked "paid," did not amount to a writing signed by the fidelity company, and thus did not constitute a renewal of the bond, it not appearing that the bill so rendered was signed by the company or by any agent authorized to act for it. See *Delaware*

*Ins. Co.* v. *Pennsylvania Fire Ins. Co.,* supra; 27 C. J. 288. Nor would the facts just recited operate as an estoppel against the company to deny that the original bond had been renewed. The mayor and council knew or should have known as well as any one else that an official bond is not executed by the mere payment of the premium therefor, and also that a writing signed by the fidelity company was necessary in order to constitute such an instrument, or a renewal thereof. Accordingly, the mayor and council could not claim an estoppel against the company merely by reason of the payment of the premium and the delivery of the bill therefor as stated. It should also be remembered that if the original bond was signed both by the city clerk and by the fidelity company, the latter assumed the relation of a surety; and that the promise of a surety in order to be binding upon the promisor must be in writing and signed by the party to be charged therewith. Civil Code (1910), § 3222 (2); *Reynolds* v. *Simpson,* 74 *Ga.* 454 (2). We exclude the statement as to the mere manner of payment as being irrelevant, because it does not appear that "the city's voucher," if endorsed and returned, contained any reference to the original bond. *North* v. *Mendel,* 73 *Ga.* 400 (2) (54 Am. R. 879).

The full payment and acceptance of the premium for an additional year would not remove the subsequent transaction either from the rule of law that a bond must exist as an instrument in writing signed by the obligors, or from the operation of the statute of frauds. Such was the rule as to a sale of realty until the enactment as a part of the Code of the statement now contained in section 4634. Ga. L. 1853-4, p. 58; Civil Code (1910), § 3223; *Black* v. *Black,* 15 *Ga.* 446 (4); Franklin *v.* Matoa Gold Mining Co., 86 C. C. A. 145 (158 Fed. 941); Kentucky *v.* Hinson, 143 Ky. 428 (136 S. W. 912, L. R. A. 1917B, 139); Wood on Statute of Frauds (1884), 823, § 486. Where the law requires a contract to be in writing, a court of equity will enforce an agreement not so executed only where "the parties have so acted upon and by virtue of the contract as that it would be a fraud to permit the defendant to repudiate it." *Haisten* v. *Savannah, Griffin &c. R. Co.,* 51 *Ga.* 199; *Simonton* v. *Liverpool &c. Ins. Co.,* supra; *Brunswick Grocery Co.* v. *Lamar,* 116 *Ga.* 1 (2), 6 (42 S. E. 366). The relief granted in such a case is allowed upon the principle of estoppel, and it is incumbent upon the complainant to show not only that

his act was performed in pursuance of and on the faith of the contract, but that it was accepted by the other party in accordance therewith, mutuality of action or its equitable equivalent being an essential ingredient of the cause of action. *Goolsby* v. *Bush,* 53 *Ga.* 353. See also, in this connection, *Singer* v. *Grand Rapids Match Co.,* 117 *Ga.* 86 (43 S. E. 755). As stated above, a renewal would not result by estoppel or otherwise merely from the payment of the premium and the delivery of a bill therefor, where the bill, though marked paid, was not signed by the company; and this conclusion is not altered by the additional fact that the mayor and council may have allowed the clerk and treasurer to become entrusted with the city's funds from time to time. Although in so dealing with the clerk they may have assumed to their injury a new position in reliance upon what they understood as an unconditional renewal by parol (the term "parol" being here employed loosely to distinguish a writing signed by the company or its agent), it is yet true that such action was not invited by the company in performance of such a contract, but was induced and accepted by the company in pursuance of what it conceived to be a materially different agreement, as one embracing the terms of the continuation certificate.

The mutuality required in a case of this sort is well illustrated by the decision in *Kinderland* v. *Kirk,* 131 *Ga.* 454 (2), 456 (62 S. E. 582), in which it was said: "The exception that partial payment of the purchase-price, accompanied by possession, is such part performance as will take a parol contract for the sale of land out of the statute of frauds rests upon the principle of equitable estoppel that the vendor has so dealt with the purchaser in receiving a part of the purchase-money, and putting him in actual possession of the land in part execution of the contract of sale, that it would be a fraud upon the vendor's part to repudiate the contract and stop short of its complete execution. It is the acts of the vendor which raise the estoppel; it is the vendor's receiving some part of the purchase price, and his consent, express or implied, to the complete and exclusive occupation of the land by the vendee. Where the vendor manifests his intention to withhold possession of the land by a positive assertion of his actual occupancy, and the vendee, with a purpose of enforcing his invalid parol contract, enters upon other portions of the land, it can not be urged that the forced pos-

session of the purchaser is a fraudulent act of the vendor. The change of possession from the vendor to the vendee comprehends the conjoint action of both. That change can never become complete until the vendor relinquishes and the vendee assumes exclusive possession of the land agreed to be sold. So long as the vendor asserts his possession by actual occupancy of the land, he can not be said to have surrendered possession to his vendee. Until the vendee shows that his possession was exclusive, and by the express or implied consent of the vendor, he is not in a position to urge that the vendor committed a fraud upon him." Under the reasoning of that decision, the full payment of the premium, with the other facts stated, would in no event authorize the municipality to claim an estoppel against the fidelity company to assert the invalidity of the parol agreement, unless it further appeared that what was done by the city officials was expressly or impliedly accepted by the company as a performance or part performance of such agreement. Such appears to be the sense and meaning of the statute upon the subject. Civil Code (1910), § 3223 (2, 3). See also *Johnson* v. *Stapleton Co.,* 132 *Ga.* 164 (63 S. E. 827).

Upon this question, it is clearly apparent that any acceptance by the company related solely to what it regarded as an agreement embracing the continuation certificate, and it would not be a fraud upon the opposite party, such as could be relieved in equity, for the company to refuse to perform a different alleged agreement, with reference to which there was no acceptance by it. Even if it be true, as contended by counsel for the city, that the clerk and treasurer was not the agent of the municipality in the matter of renewing his own bond, but was to be treated as the agent of the fidelity company (cf. *Lewis* v. *Gordon County,* 70 *Ga.* 486, 496; White v. Duggan, 140 Mass. 18 (2 N. E. 110, 54 Am. R. 437) ; King County v. Ferry, 5 Wash. 536 (32 Pac. 538, 19 L. R. A. 500) ; Paxton v. State, 59 Neb. 460 (81 N. W. 383, 385, 80 Am. St. R. 689) ; Singer Mfg. Co. v. Freerks, 12 N. D. 595 (98 N. W. 705) ; Gritman v. U. S. Fidelity & Guaranty Co., 41 Wash. 77 (83 Pac. 6) ; San Antonio Brewing Asso. v. J. M. Abbott Oil Co. (Tex. Civ. App.), 129 S. W. 373; Cresap v. Furst, 141 Miss. 30 (105 So. 848) ; Times-Picayune Pub. Co. v. Frierson (Miss.), 144 So. 235; Maryland Casualty Co. v. Wellston, 47 Okla. 417 (148 Pac. 691) ; Thompson v. Citizens Bank & Trust Co., 222 Ky. 492 (1 S. W.

(2d) 770) ; Butler v. United States, 88 U. S. 272 (22 L. ed. 614) ; 50 C. J. 42), there is still no sufficient basis for an estoppel against the company. If such an agency did in law arise, it is nevertheless a well-settled rule that when an agent is guilty of a fraud upon his principal, and the consummation of the same would interfere with his fraudulent design, knowledge of such fraud is not imputed to the principal. *Pursley* v. *Stahley*, 122 *Ga.* 362 (50 S. E. 139) ; 2 C. J. 868. Upon application of this principle, the fidelity company, under the facts appearing, could not have known that the continuation certificate did not reach the municipal authorities. On the contrary, the company naturally presumed that the certificate had been delivered as intended, and its subsequent conduct was necessarily predicated upon that assumption. *English* v. *Poole,* 31 *Ga. App.* 581 (4) (121 S. E. 589), and cit. So, even if the city through the mayor and council may have paid the premium in pursuance of and on the faith of what it conceived as a parol agreement exclusive of the continuation certificate, and may also have allowed the clerk and treasurer to have possession of the public funds in further reliance thereon, these acts were not so accepted by the opposite party ; and accordingly there was no such "conjoint action" of the parties as would avoid the rule of law by which the agreement was required to be in writing.

Counsel for the municipality invoke the principle that "when one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss." Civil Code (1910), § 4537. The facts do not justify an application of this principle. There was no reason for the company to anticipate injury to the municipality as a result of communications had solely with the clerk and treasurer. The only real authority of the clerk was to present the bill and the continuation certificate, and he was not clothed with apparent authority to do more. It certainly can not be claimed that he was other than a special agent for a particular purpose ; and in such a case, "persons dealing with the agent should examine his authority." Civil Code (1910), § 3595. If in concealing the certificate and delivering only the unsigned bill for the premium the clerk and treasurer attempted to renew an official bond without a writing signed by the party or parties to be charged, the law itself placed the city authorities on notice that this could not be done, and they

were presumed to know the law. In these circumstances, there was no duty on the fidelity company to foresee and guard against the suppression of the continuation certificate, since as a reasonably prudent person it should not have anticipated that the mayor and council would be content to rely and act upon the remaining facts as renewing the bond, if the certificate for any reason should not be delivered to them. The principle relied on by counsel has many qualifications and can not be applied except in a limited range of circumstances. In Western Union Telegraph Co. *v.* Schriver, 141 Fed. 678 (4 L. R. A. (N. S.) 678), it was said: "The rule, that, where one of two innocent parties must suffer from the fraud of a third, he who furnishes the means to commit it must bear the loss, is limited in its application to cases in which the party chargeable makes the third party his real or apparent agent, cases in which he provides the means intentionally, or for a dishonest purpose, or negligently, and cases in which he derives a benefit from the fraud of the third party. It does not govern the great majority of cases where one innocently, for an honest purpose and with reasonable care, furnishes to a third party the means by which he perpetrates a fraud from which he who provides the means derives no benefit." The rule does not apply, therefore, where no fault or negligence is imputable to the party sought to be held thereby. 21 C. J. 1172. From the question propounded by the Court of Appeals it does not appear that there was any fault or negligence on the part of the fidelity company.

Furthermore, the municipality can not claim such innocence on its part as will entitle it to invoke the principle. It was charged, as a matter of law, with notice that the clerk and treasurer as agent of the fidelity company could not consummate a valid contract in the nature of an official bond without a writing signed by the company. If the clerk sought to renew his bond in a manner not recognized by law, this irregularity alone was sufficient to put the mayor and council on inquiry and to affect them with constructive knowledge of every condition and circumstance which a proper inquiry would have disclosed, including the fact that the only contract actually proposed by the company was one which should embrace the terms of the continuation certificate. "Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Igno-

rance of a fact, due to negligence, is equivalent to knowledge, in fixing the rights of parties." Civil Code (1910), § 4530. See also § 4534.

In Sroelowitz v. Schultz, 86 Ill. App. 341 (2), it was said: "Equity will not postpone the interest of one who has omitted no duty devolving on him to the interests of another whose negligence has made it possible for a loss to occur." In Keeney v. Bank of Italy, 33 Cal. App. 515 (165 Pac. 735), it was held that "A bank having constructive notice that an account was impressed with a trust was not an innocent party, and could not invoke the doctrine that where one of two innocent parties must suffer he should suffer whose act contributed to the wrong." In 21 C. J. 1129, it is said: "As a corollary to the proposition that the party setting up an estoppel must have acted in reliance upon the conduct or representations of the party sought to be estopped, it is as a general rule essential that the former should not only have been destitute of knowledge of the real facts as to the matter in controversy, but should have also been without convenient or ready means of acquiring such knowledge. One relying upon an estoppel must have exercised such reasonable diligence as the circumstances of the case require. If he conducts himself with a careless indifference to means of information reasonably at hand or ignores highly suspicious circumstances which should warn him of danger or loss, he can not invoke the doctrine of estoppel."

Since the lack of authority in the city clerk to renew the bond in the manner claimed by the municipality was by construction of law within the knowledge of the governing authorities, the loss resulting from his conduct must rest where it falls, and can not be shifted to the fidelity company. The city is not in position to invoke the principle so ably and earnestly urged by its counsel. Hendry v. Cartwright, 14 N. M. 72 (2) (89 Pac. 309) ; Franklin Savings Bank v. International Trust Co., 215 Mass. 231 (102 N. E. 363) ; Quincy Mutual Fire Ins. Co. v. International Trust Co., 217 Mass. 68 (104 N. E. 845) ; Baker County v. Huntington, 46 Oregon, 275 (79 Pac. 187) ; Cutler v. Roberts, 7 Neb. 4, 13 (29 Am. R. 371, 376) ; Dair v. United States, 83 U. S. 1, 5 (21 L. ed. 493).

It is stated that the bill for the premium was accompanied by "a continuation certificate, expressly limiting the liability of the fidelity company to the amount of the original bond," but the clerk in

presenting the bill to the governing authorities retained this certificate in his possession "and did not let the city know anything about it." The term "certificate" imports the statement of some fact, in a writing signed by the party certifying, and the continuation certificate, considered with the other facts, might perhaps have constituted a renewal of the original bond; but in view of what has been said above, such renewal would necessarily be encumbered with the conditions stated in such certificate, since the other facts, without more, would not amount to a renewal. It follows that the facts stated in the first question would not constitute "a renewal of the original bond, irrespective of the continuation certificate." The first question should be and is answered in the negative.

■ Since the first question is answered in the negative, the Court of Appeals does not request instruction upon the second question. The rulings made in answer to the first question practically control the third question; and in reply to the third question it is held that the fidelity company would not be liable "for the defalcations of the clerk to the amount of the bond for each year;" but if renewals of the original bond were at all effectuated, the liability assumed thereby was limited, as stated in the continuation certificate, to the amount of the original bond.

It is contended by counsel for the municipality that the renewal of a bond or other liability contract from year to year would result in a new and distinct contract for each year, with a liability upon each renewal to the amount of the original bond, or, in other words, that the liability would increase annually by that amount. Although there are decisions to the contrary, the weight of authority appears to support the view as thus stated, where the original bond contained no provision as to renewal, and renewals thereafter effectuated were not accompanied by stipulations limiting the liability to the original amount. Cf. Maryland Casualty Co. *v.* First National Bank, 246 Fed. 892; Ætna Casualty &c. Co. *v.* Commercial State Bank, 13 Fed. (2d) 47; Proctor Coal Co. *v.* U. S. Fidelity & Guaranty Co., 124 Fed. 424; De Jernette *v.* Fidelity Co., 98 Ky. 558 (33 S. W. 828); Fourth Bank & Trust Co. *v.* Fidelity & Deposit Co., 153 Tenn. 176 (281 S. W. 785), and cit. See also *John Church Co.* v. *Ætna Indemnity Co.,* 13 *Ga. App.* 826 (80 S. E. 1093); *Chatham Real Estate &c. Co.* v. *U. S. Fidelity*

&c. Co., 18 Ga. App. 588 (90 S. E. 88). But in the present case the bond contained no provision for its renewal; and if under the other facts of the case any sort of renewal was accomplished, the continuation certificate necessarily entered as a condition thereof, and this certificate "expressly limited the liability of the fidelity company to the amount of the original bond." In such case there would be no cumulative or increasing liability. This must be true for the reason that, since the original bond contained no obligation whatever by the fidelity company to renew it, the company was free to name the terms upon which it would agree to become liable for another year. Grand Lodge v. Massachusetts Bonding &c. Co., 324 Mo. 938 (25 S. W. (2d) 783); Michigan Mortgage-Investment Cor. v. American Employment Insurance Co., 244 Mich. 72 (221 N. W. 140); U. S. Fidelity & Guaranty Co. v. First National Bank, 233 Ill. 475 (84 N. E. 670); U. S. Fidelity &c. Co. v. Citizens Bank, 147 Ky. 283 (143 S. W. 997); U. S. Fidelity & Guaranty Co. v. Shepherd's Home Lodge, 163 Ky. 706 (174 S. W. 487); First National Bank v. U. S. Fidelity &c. Co., 110 Tenn. 10 (75 S. W. 1076); Pearson v. U. S. Fidelity &c. Co., 138 Minn. 240 (164 N. W. 919, 100 Am. St. R. 765). The third question is answered in the negative.

■ The fourth question is subdivided into several distinct interrogations, the first of which is as follows: "Is it essential to the validity of a contract of fidelity insurance in Georgia that the same be, in writing?" At common-law it was not required that any contract of insurance should be in writing in order to be valid. The common-law rule prevails in most if not all of the States of the Union except the State of Georgia. Meriwether v. Metropolitan Life-Ins. Co., 44 Ga. App. 596 (162 S. E. 421); Newark Fire Ins. Co. v. Smith, 176 Ga. 91 (167 S. E. 79). In this State it was long ago declared by statute that policies of life and fire insurance should be in writing in order to be valid. Civil Code (1910), §§ 2470, 2499. It does not follow from these statutes, however, that a policy of fidelity insurance must be in writing. Nor is such a contract to be classed as an undertaking of guaranty or suretyship, and it thus is not a promise to answer for the debt, default, or miscarriage of another within the meaning of the statute of frauds. Maddox v. Pierce, 74 Ga. 838; Everly v. Equitable Surety Co., — Ind. App. (127 N. E. 616); Pearson v. U. S. Fidelity &c. Co.,

supra; Quinn-Shepherson Co. *v.* U. S. Fidelity &c. Co., 142 Minn. 428 (172 N. W. 693). It is in effect a contract of indemnity; and it has been held by this court that a contract of that character is not within the statute of frauds and need not be in writing. *Jones* v. *Shorter,* 1 *Ga.* 294 (2) (44 Am. D. 649); *National Bank of Tifton* v. *Smith,* 142 *Ga.* 663, 665 (83 S. E. 526, L. R. A. 1915B, 1116).

But there are other statutes from which it appears that a policy of fidelity insurance must be in writing in this State. The Code of 1910, as adopted by the legislature on August 15 of that year, contains a compilation of statutes in a subdivision which is styled "Article 4, Chapter 2, Second Title." This article begins with section 2388, and continues with other sections providing the manner of incorporating insurance companies. All of the other sections to which reference will be made in this connection are also contained in article 4. Section 2404 is in part as follows: "Contracts of insurance to be entered into by any company organized under this article shall not be binding unless evidenced by a policy of insurance in writing or print, or both, and the liability of said company, in case of loss sustained by any policyholder, shall be governed by the terms, stipulations, and conditions appearing upon the face of the policy." These provisions apply to an insurance company of any character which is organized under article 4. Sections 2550-2562 inclusive expressly recognize fidelity insurance companies; and if such a compony is organized under the laws of this State, the organization must be accomplished as provided in article 4. See sections 2388, 2389, 2390. It follows that if a fidelity insurance business is carried on by a domestic company, its policies must be in writing as required by section 2404. If the insurer involved in this case is not a domestic company but was chartered by the laws of some other State, does the same rule apply? Sections 2414 and 2415 provide for the licensing of insurance companies, and are applicable to insurance companies "chartered by this State or other State or foreign government." By section 2462 it is provided that "any fidelity-insurance company incorporated and organized under the laws of any other State of the United States, or foreign governments, and which has a paid-up capital of not less than two hundred and fifty thousand dollars, may be licensed to transact business in this State upon compliance with all the requirements

prescribed by this article, so far as the same may be applicable, for license to foreign life-insurance companies to transact business in this State." It is not supposed that the legislature intended that a foreign company licensed to conduct a fidelity-insurance business in the State of Georgia should be governed by a different rule as to the method of making contracts from that which is applied to domestic companies. On the contrary, it is presumed that in providing for the licensing of non-resident companies it was the intention of the lawmakers to permit such companies to conduct a fidelity business only in the manner recognized by the Georgia laws and upon the terms and conditions prescribed for the conduct of such business by domestic companies. We conclude, that, whether the insurer is a resident or non-resident corporation, a contract of fidelity insurance must be in writing, under the laws of this State.

■ But an additional query in the fourth question was as follows: "Can a written contract of fidelity insurance, which provides for no renewal thereof, be renewed from year to year by the presentation by the obligor of an invoice or bill for the premium due (which specifies the number of the original policy, its amount, the amount of the premium due for the next year, and which contains this expression on the bottom thereof: 'Read your policy'), and the payment of the premium by the obligee in the fidelity bond to the obligor therein, such invoice being marked paid?" This question is answered in the negative. "Under our statute it is contemplated that the whole contract of insurance shall be in writing, and that it shall be signed by the insurer." *Delaware Ins. Co.* v. *Pennsylvania Ins. Co.,* supra. A suit can not be maintained upon a parol renewal of an insurance policy. *Roberts* v. *Germania Fire Ins. Co.,* 71 *Ga.* 478. The rule that a policy of insurance shall be in writing and signed by the insurer applies to contracts issued upon a cash basis as well as to those issued upon a credit basis, if such there may be. Therefore the facts stated in the question as just quoted would not amount to a renewal of the original policy. Nor would the insurer be estopped to deny the invalidity of an alleged renewal based upon such facts. What is said in the first division of this opinion should be considered in connection with this question. If a given state of facts would be insufficient to constitute a renewal for a single year, a repetition of such facts from

year to year would not increase their efficacy for such purpose either for a particular year or for a number of years.

The final interrogation stated as a part of question 4 does not require answer, in view of the rulings in answer to other questions.

Something has been said by counsel as to whether the company should be liable for a return of the premiums, and to this extent only. The Court of Appeals did not request instruction upon these questions, and nothing said in the above decision is intended as a ruling thereon.

*All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*